## HENRY PIERSON AND SONS

*vs.*

## OTTO GOHR, JR., By His Next Friend.

*General contractors and sub-contractors: Responsibilities to employees and laborers.*

It can not be said, as matter of law, that a general contractor, who has charge of a building and who does some of the work himself, and who contracts with others to do other parts of the work in and about the building, owes no duty to an employee of a sub-contractor to see that the employees of another such sub-contractor do not, by their negligence, injure him, if the injury is such as might have been anticipated by the contractor and he could by reasonable precautions have protected him and others rightfully there.                              · p. 399

When laboring men and others engage to work for sub-contractors, they have no right to expect the general contractor to insure their safety, but they have the right to demand that he will do his part and not permit the sub-contractors to carry on their work regardless of the safety of others who have the right to be about the building.                    · p. 399:

An employer will be liable, where work is being done by an independent contractor, if the injury be such as might have been anticipated by him as a probable consequence of the work so let out to the contractor, and he took no precautions to prevent it.                                        p. 400

In such a case, whether the injury might reasonably have been anticipated as a probable consequence of the work contracted for, is a question for the jury.          ·          .          p. 400

*Decided June 22nd, 1915.*

Appeal from the Baltimore City Court.  (GORTER, J.)

The facts are stated in the opinion of the Court.

The following are the prayers offered by the plaintiff, and the ruling of the Court thereon:

*Pltff's 1st Prayer*—The plaintiff prays the Court to instruct the jury that if they shall find a verdict for the plaintiff, then in estimating the damages, they are to consider his health and condition before the injury complained of as compared with his present condition in consequence of said injury, and whether the same is in its nature permanent, and how far, if at all, it is calculated to disable him from engaging in those employments for which, in the absence of such injury, he would have been qualified; also the physical and mental suffering to which he has been subjected by reason of said injury, and they are to allow him such damages as in the opinion of the jury will be a fair and just compensation for the injuries sustained and for the *loss of earnings and* expenses which he incurred by reason of said injuries. (*Granted.*)

*Pltff's 2nd Prayer*—The plaintiff prays the Court to instruct the jury that if they believe from the evidence that the plaintiff on or about the 11th day of October, 1913, was injured while unloading bricks in a building then in the course of construction and under the control of the defendants, and that said injuries were caused by a brick or bricks falling through an opening in the third floor of said building that brick or bricks striking plaintiff on the side or back, and if they further find that the defendant George W. H. Pierson directed the plaintiff to unload his bricks at an unsafe place in said building if they so find, and if they further find that the injuries to plaintiff might reasonably have been anticipated by defendants as a probable consequence of the work being done on said building, and if they further find that the defendants failed to take reasonable precautions to prevent said injuries to plaintiff then their verdict shall be for the plaintiff, and if they further find that the plaintiff

did not directly contribute to said injuries *by a want of ordinary care and caution upon his part.* (*Granted as modified.*)

*Pltff's 3rd Prayer*—The plaintiff prays the Court to instruct the jury that if they find the facts stated in the plaintiff's second prayer, then they are instructed that it is no defense to this suit that the brick work for the defendants *was contracted for and* done by one Harry A. Brown under an independent agreement, as testified to by said ·Brown, *provided the jury further find that the injury to the plaintiff was caused solely by the said Brown or his employes in failing to exercise ordinary care in not protecting persons working on the lower floor from material that might fall from the upper floors and was not caused at all by any want of ordinary care upon the part of the defendants or their employes.* (*Granted as modified.*)

And the defendants offered the following prayers, which were modified by the Court by the insertion of the words italicized:

*Court's First Instruction at Request of Defendants, George W. H. Pierson and J. Henry Pierson*—The Court instructs the jury that there is no evidence in this case legally sufficient to entitle the plaintiff to recover against the defendants, George W. H. Pierson and J. Henry Pierson, and that their verdict shall, therefore, be for these defendants. (*Refused.*)

*Court's Second Instruction at Request of Defendants, George W. H. Pierson and J. Henry Pierson*—The Court instructs the jury that there is no evidence under the pleadings in the first count of the declaration filed herein legally sufficient to entitle the plaintiff to recover against the defendants, George W. H. Pierson and J. Henry Pierson, and that their verdict shall, therefore, be for these defendants upon the issues joined on said count. (*Refused.*)

*Court's Third Instruction at Request of Defendants, George W. H. Pierson and J. Henry Pierson*—The Court instructs the jury that there is no evidence under the plead-

ings in the second count of the declaration filed herein legally sufficient to entitle the plaintiff to recover against the defendants, George W. H. Pierson and J. Henry Pierson, and that their verdict shall, therefore, be for these defendants upon the issues joined on said count. (*Refused.*)

*Court's Fourth Instruction at Request of Defendants, George W. H. Pierson and J. Henry Pierson*—The Court instructs the jury that it appears from the uncontradicted evidence in this case that the injuries to the plaintiff were caused by his failure to exercise such care and caution for his own safety as is ordinarily exercised by prudent persons under similar circumstances, and that their verdict shall, therefore, be for the defendants, George W. H. Pierson and J. Henry Pierson upon the issues joined. (*Refused.*)

*Court's Fifth Instruction at Request of Defendants, George W. H. Pierson and J. Henry Pierson*—The Court instructs the jury that it appears from the uncontradicted evidence in this case that Harry A. Brown, the contractor mentioned in the evidence, was an independent contractor of the defendants, George W. H. Pierson and J. Henry Pierson, for whose acts and for the acts of whose servants and employes the said defendants, George W. H. Pierson and J. Henry Pierson, are not legally responsible; and if they shall believe from the evidence that the injury to the plaintiff was caused *solely* by the act or acts *or omissions* of the said Harry A. Brown, his agents or servants, *without any want of care upon the part of the defendants contributing thereto,* then their verdict shall be for the defendants, George W. H. Pierson and J. Henry Pierson. (*Granted as modified.*)

*Court's Sixth Instruction at Request of Defendants. George W. H. Pierson and J. Henry Pierson*—The Court instructs the jury that it appears from the uncontradicted evidence in this case that the plaintiff was injured as a result of the carelessness of one William Carr, who, at the time of the accident, was an employee of one Harry A. Brown, and it further appearing from the uncontradicted evidence that the said Harry A. Brown was an independent contractor

of the defendants, George W. H. Pierson and J. Henry Pierson, for whose acts the said defendants, George W. H. Pierson and J. Henry Pierson, are not legally responsible, their verdict shall, therefore, be for the defendants, George W. H. Pierson and J. Henry Pierson; there being no evidence in this case legally sufficient to prove that the said defendants, George W. H. Pierson and J. Henry Pierson, or their agents or servants, caused the injuries complained of. (*Refused.*)

*Court's Seventh Instruction at Request of Defendants, George W. H. Pierson and J. Henry Pierson*—The Court instructs the jury that if from the evidence they shall find that the brick mentioned in the evidence fell as the result of an act of one William Carr, and that said brick was in his custody and control when the same fell, and if they shall further find that the said William Carr was an employe of Harry A. Brown, and if they shall further find that there existed between the said Harry A. Brown and the defendants, George W. H. Pierson and J. Henry Pierson, a certain agreement, by the terms of which the said Harry A. Brown agreed to lay brick on said work in compliance with the plans and specifications furnished him by the said defendants, George W. H. Pierson and J. Henry Pierson, at a certain rate per thousand, and if they shall further find that said agreement gave said Harry A. Brown complete control of the laying of the brick and of the persons employed by him to do such work, including said William Carr, then their verdict shall be for the defendants, George W. H. Pierson and J. Henry Pierson. (*Refused.*)

*Court's Eighth Instruction at Request of Defendants, George W. H. Pierson and J. Henry Pierson*—The Court instructs the jury that if from the evidence they shall find that the injuries to the plaintiff were directly caused by the negligence of one William Carr, and if they shall further find that the said William Carr was, at the time of the accident, an employe of one Harry A. Brown, then their verdict shall be for the defendants, George W. H. Pierson and J. Henry Pierson, it appearing from the uncontradicted evidence in this

case that the said Harry A. Brown was an independent con-
tractor of said defendants, George W. H. Pierson and J.
Henry Pierson, for whose acts and for the acts of whose
employes the said defendants, George W. H. Pierson and
J. Henery Pierson, are not legally responsible. (*Refused.*)

*Court's Ninth Instruction at Request of Defendants,
George W. H. Pierson and J. Henry Pierson*—The Court
instructs the jury that, in order for the plaintiff to recover
against the defendants, George W. H. Pierson and J. Henry
Pierson, under the pleadings of the first count of the decla-
ration filed herein, the burden is on the plaintiff to show,
by a fair preponderance of the testimony satisfactory to
them that the brick which fell, injuring the plaintiff, fell
from the third floor of the building mentioned in the evidence,
and further, that the said defendants, George W. H. Pierson
and J. Henry Pierson, their agents or servants, were working
on said third floor at the time the said brick fell, and further,
that the falling of said brick was occasioned by the negligence
of said defendants, George W. H. Pierson and J. Henry Pier-
son, their agents' or servants; and if they shall believe that
such facts are not true, or if the evidence shall leave their
minds in a state of even balance as to the truth or falsity of
such facts, then their verdict shall be for the defendants,
George W. H. Pierson and J. Henry Pierson, upon the issues
joined upon said first count.

The jury is further instructed that "negligence," as herein
used, means a failure to use such care and caution in the
premises as is ordinarily exercised by prudent persons under
similar circumstances. (*Refused.*)

*Court's Tenth Instruction at Request of Defendants,
George W. H. Pierson and J. Henry Pierson*—The Court
instructs the jury that, in order for the plaintiff to recover
against the defendants, George W. H. Pierson and J. Henry
Pierson, under the pleadings of the second count of the
declaration filed herein, the burden is on the plaintiff to show,
by a fair preponderance of the testimony satisfactory to
them, that the brick which fell and hit the plaintiff fell by

reason of the failure of the defendants, George W. H. Pierson
and J. Henry Pierson, to exercise such care and caution as
is ordinarily exercised by prudent persons under similar cir-
cumstances in providing protection against injuries to persons
lawfully engaged in and upon the building mentioned in the
evidence, and, further, by reason of the failure of the said
defendants to exercise reasonable care and caution to prevent
materials which were being used by the said defendants,
George W. H. Pierson and J. Henry Pierson, their agents
or servants, *or sub-contractors or their* servants, in the course
of the construction and erection of said building, from fall-
ing upon and injuring persons lawfully engaged in working
upon said building; and if they shall find that such reason-
able care in the premises was used by said defendants, or if
the evidence shall leave their minds in a state of even balance
as to whether such care and caution was or was not exercised
by said defendants, then their verdict shall be for said
defendants, George W. H. Pierson and J. Henry Pierson,
upon the issues joined upon said second count. (*Granted
as modified.*)

The cause was argued before Boyd, C. J., Briscoe, Burke,
Thomas, Urner and Stockbridge, JJ.

*Walter L. Clark* and *Robert R. Carman,* for the appellant.

*Stephen W. Leitch* and *Edward M. Hammond,* for the
appellee.

Boyd, C. J., delivered the opinion of the Court.

This action was originally against Harry A. Brown and
these appellants, and a verdict was rendered against them for
$350.00. Each of them made a motion for a new trial and
the motion was granted as to Henry Pierson & Sons and over-
ruled as to Brown. A judgment was entered against Brown
on that verdict, but no question is presented by the record as
to that. The case was re-tried against Henry Pierson &
Sons, and a verdict for $500.00 was rendered against them.
This appeal is from a judgment entered on that verdict.

One exception was taken to the action of the lower Court in reference to the admissibility of evidence and another to the rulings on the prayers. The Court granted the three prayers offered by the plaintiff, with some modifications, and granted, as modified, the fifth and tenth, and rejected the first, second, third, fourth, sixth, seventh, eighth and ninth prayers offered by the defendants. It also overruled some special exceptions filed by the defendants to the plaintiff's second prayer.

The appellants concede that if they are liable at all, the verdict is not unreasonable in amount, but they contend that there was no evidence of actionable negligence on their part, and that if the accident was the result of negligence, it was that of Harry A. Brown, or his agents, who was according to the appellants' contention an independent contractor and they claim they were therefore not responsible for the injury complained of. The appellants had a contract for the erection of a building on the northwest corner of Aliceanna and Spring streets in the City of Baltimore. They made a verbal contract with Brown by which he was to furnish the labor to lay the bricks in the building at a stipulated sum per thousand. He furnished and paid the hodcarriers, the bricklayers and the men for the hoisting machine, as well as the machine itself, which was used to hoist the bricks to the upper stories. He erected the bricklayers' scaffold and a "run-way" from the hoist to the scaffold. A wheelbarrow which will be spoken of was also furnished by him. The appellants furnished the bricks and all materials, including the lumber used in the scaffold and run-way. They paid Brown every Friday for the bricks laid, and he paid his men. It was a three-story brick building, and at the time of the accident the bricklayers were working on the third story. There were wooden joists in the building, and there was a platform against the wall, on which the bricklayers worked. There is some difference in the statements of the witnesses about the width of the platform, but that is not material.

The plaintiff was driving a wagon for Mr. Langaman, who was in the hauling business. On the day of the accident he was hauling brick to the appellants at this building, and had been hauling them there about two weeks. He said that at the time of the injury he drove into the building on Alice-anna street, and was about fifty feet from the entrance when he was injured. The pile of bricks at which he was about to unload was in the first story, under the scaffolding in the third story. He tossed the bricks from the front of the wagon to the man who was piling them. While he was doing so, he heard something coming through the joists—some bricks struck the horses and they gave a plunge. Just as he grabbed for the lines, some bricks struck him and knocked him under the horses. According to the evidence he was injured se-verely.

The hoisting machine was about midway of the building, and the hodcarriers wheeled the bricks in wheel-barrows, went up the hoist and then wheeled them from the hoist to the platform, where the bricklayers were at work, on a run-way which was of the width of two boards. Some boards were first laid across the joists, and the run-way was laid on them, as it ran in the same direction as the joists. William Carr was taking a load of bricks on the run-way from the hoist to the bricklayers. He said he thought it was about forty feet from the hoist to the scaffold, and when he was about half-way a brick fell off the wheel-barrow, got over the wheel and threw the barrow over. He was on the third floor, and a number of bricks fell between the joists on the third and second floors down to the first, where plaintiff was injured. Carr said he did not know how many went down, but there might have been twenty or thirty. One of the plaintiff's witnesses said he could see from the third floor to the first, through the joists, and another said he could see from the first floor up to the sky. The evidence is conflicting as to how much of that floor was covered over—the appellants claiming that all of it that could be was covered, but they admitted that there was what they called a well open, to

take timber through, and some timbers were lifted between the joists. The appellee's witnesses testified that it was open all the way up, above where plaintiff was working, excepting where it was covered by the joists, the platform and run-way.

The plaintiff said he had first piled bricks he hauled to that building on Spring street, and then had orders to go inside, that "Mr. Pierson told me how to do it, and I had been putting them in that particular place about a week. On the first load I took inside, I told Mr. Pierson that that place was dangerous for a man to get underneath there and work, and he said 'never mind, go ahead.' I thought it was dangerous because there was nothing up at the top to stop anything from falling down only the joists and anything would go right straight through those." The appellants rely on that statement to show contributory negligence, and it will be as well to consider that at once. They offered a prayer (the fourth) "that it appears from the uncontradicted evidence in this case that the injuries to the plaintiff were caused by his failure to exercise such care and caution for his own safety as is ordinarily exercised by prudent persons under similar circumstances, and that their verdict should therefore be for the defendants," etc. But in the first place, such can not be said to be the uncontradicted evidence. Both of the defendants, their foreman and Mr. Brown testified that the floor was covered over as well as it could be while the work was going on, and Mr. Pierson denied the statement of the plaintiff. Moreover, it would be a harsh rule to announce as a matter of law that the plaintiff, who was only twenty years of age, must be deprived of his right to recover on the ground of contributory negligence because he continued to work there, although Mr. Pierson, an experienced builder, told him to "go ahead," and a number of men were working there. The plaintiff said, "Ed. Moore (boss hod-carrier) was there, and a whole lot of other men were coming up to the wagon to get brick to send up-stairs." The plaintiff was not an employee of the defendants, and hence no question of assumed risk was involved. To grant that prayer would

be equivalent to holding that laboring men and mechanics could not recover, if they worked in a building where they thought there was danger of something falling on them and injuring them. In our judgment it was properly rejected.

Before we consider what we regard as the most important question in the case we will pass on the objection presented by the first bill of exceptions. John F. Nichols testified he was a journeyman carpenter, had been in the "carpentry business since 1896 or 1897. That is the only business I know. I have worked on all kinds of buildings, little and big, everything in the way of carpentry business; I have done all branches of the carpentry business. I have been in Baltimore City since 1904." He said he was at the building while it was under construction, but he had not paid much attention to it. He had heard the testimony of the previous witness, how the joists were laid. He was then asked the question: "In your experience, and during the time that you worked on buildings where they are laying down joists, as they did in this case, on the third floor, for instance, is there any practice among builders to make any provision for covering and protecting people about the building?" That was objected to, and the objection being overruled, he answered: "The practice among builders is to cover those joists over." He then went on to say: "This is done to protect the people who are walking underneath, to and from the mechanics and bricklayers. The practice is generally to cover with 1 by 12 by 16 boards. The practice does not extend to the entire opening, the whole floor. * * * The elevator opening is always open. Sometimes a carpenter has to walk through there or something like that, and it has got to be protected. As in this case where they were hauling material in, that is supposed to be protected, too."

We think it was admissible to prove the practice of builders in such cases. All of the jurors could not be expected to know what the custom was, and while proof that certain precautions were or were not usually taken in such cases would not be conclusive, it would reflect upon the question of

care and tend to show what could reasonably be done for the protection of those having the right to be in the building. In *Weilbacher* v. *Putts Co.,* 123 Md., on page 257, comment was made by JUDGE THOMAS on the fact that there was no evidence to show that it was a common occurrence for a painter to fall from a suspended stage (which caused the injury to the appellant while passing on the pavement), "or that it was customary to erect guards or covers over sidewalks above which men are engaged in painting a building from a suspended stage, or to 'rope' the street, so as to prevent persons from using the sidewalk during the progress of the work." He referred to affirmative proof that had been offered, to show the contrary. Moreover, some of the most important evidence of this witness on the subject was apparently introduced without objection, but regardless of that, and without discussing it further, we are of the opinion that there was no reversible error in the ruling presented by that exception.

The defense mainly relied on by the appellants was that the injury was caused by the negligence of Brown, or his servants, if it was the result of negligence at all, and that he was an independent contractor, and hence they were not responsible for his negligence. The rule as announced in *Deford* v. *State, use of Keyser,* 30 Md. 179, on page 203, has often been since applied. It was there held that, "the rule of *'respondeat superior'* does not apply where the party employed to do the work, in the course of which the injury occurs, is a contractor, *pursuing an independent employment,* and, by the terms of the contract, is free to exercise his own judgment and discretion as to the means and assistants that he may think proper to employ about the work, exclusive of the control and direction, in this respect, of the party for whom the work is being done. In such case, the workmen employed by the contractor are *his* servants, and he is liable for any negligence or unskilfulness in the course of their employment, and not the party engaging the contractor to execute the work. The greatest difficulty, however, in these

cases is in determining, upon the facts, who is to be regarded
as the master of the wrongdoer." JUDGE ALVEY, in deliver-
ing the opinion for the Court in that case, was careful to
say, that it was a proposition absolutely untenable that in no
case can a man be responsible for the act of a person with
whom he has made a contract, and added: "If the contractor
does the thing which he is employed to do, the employer is
responsible for that thing as if he did it himself. And in
all cases where a party is in possession of fixed property, he
must take care that it is so used and managed that other
persons shall not be injured; and whether it be managed by
his own servants, or by contractors, or their servants, makes
no difference in respect to his liability. 'If a man has any-
thing to be done on his own premises, he must take care
to injure no man in the mode of conducting the work.
Whether he injures a passenger in the street, or a servant
employed about his work, seems to make no difference.' *Rap-
son* v. *Cubitt,* 9 M. & Wels. 713." In *City and S. Ry. Co.* v.
*Moores,* 80 Md. 348, we said: "Even if the relation of prin-
cipal and agent, or master and servant, does not, strictly
speaking, exist, yet the person for whom the work is done may
still be liable if the injury is such as might have been antici-
pated by him, as a probable consequence of the work let out
to the contractor, or if it be of such character as must result
in creating a nuisance, or if he owes a duty to third persons
or the public in the execution of the work."

In addition to the facts we have already stated, it may be
well to here call attention to some others. Mr. Brown said
he was putting up the wall according to specifications and
plans. He was then asked: "The details of the work you
attended to yourself?" and replied, "Yes; he (speaking of
Mr. Pierson) had a foreman carpenter there to see the work
was correctly carried out. He was the general foreman car-
penter on the work." The foreman testified: "I was the
foreman. I worked all over the building." William Carr,
who was wheeling the wheel-barrow when it upset, was called
by the defendants, and he testified: "When the wheel-barrow

upset, it turned to my left, and the bricks fell out. They went through the floor, down to the ground; they went through the joists. It was not nothing down below on the other floor. I was on the third floor. Naturally, when I threw them out, they fell right on that floor. There was plenty of room. I had not gotten to that wide scaffold yet. I took my orders from Harry Brown." Upon cross-examination he said: "I could see through to the ground anywhere in the building. Some of the boards were there, very far apart. You could see right down on the ground most anywhere in the building. And the bricks that I let fall went through the joists. There was nothing else on the joists at that place besides the run-way—everything was open." Mr. Brown said, "At the time this accident happened, they were using openings in the floor to hoist timbers through. They were using the openings in the floor to hoist timbers through the whole time that the job was going on, and I used the opening myself to hoist my boards to the scaffold." He was then asked: "These other parts of the floor that were not actually used for hoisting materials—did you observe whether there was any covering over these?" and replied, "I could not say that. I only looked out after the part of the scaffold that I had to work on."

While there is some contradiction as to the extent the floor was covered over, it cannot be denied that there was evidence of witnesses on both sides tending to show that a considerable part of it in the third story was open and unprotected, and apparently most, if not all, of the second was open at the time. It is likewise true that while the appellants had a contract with Brown by which he was to do the brick-work, and employ and pay for the hands connected with that, there is nothing to indicate that his contract required him to cover the floor beyond the scaffolding where his men were working and the run-way. Indeed, as we have seen, the floor was being kept open at places for the use of the appellants themselves, as they were working there at the same time. The bricks were being hauled by the plaintiff for

their benefit—according to the contract they were to furnish them, and did furnish them.   There is evidence that the bricks were being piled where they were by the direction of one of the appellants.   One of the witnesses for appellants, Eugene Blake, testified that at the time of the accident he was helping to unload the wagon.   He and the plaintiff were taking out the front board of the wagon, and trying to get some brick out so he could get on the ground and pile them up.   He said he pushed the plaintiff out of the way to keep him from being hurt, and so he could jump off and keep from being hurt himself when the bricks fell.   He was in the employ of the appellants—he said, "Mr. Pierson was my boss."   The plaintiff was not in the employ of Brown and there were probably other men around, who were either in the employ of the appellants or of others than Brown.

Giving full effect to the doctrine of independent contractor, an important question in this case is whether the appellants did not owe a duty to the appellee to protect him from the results of such negligence of an employee of Brown as caused this injury, and we cannot say they did not, under the facts disclosed by the record, nor could the Court say, as a matter of law, he performed that duty, and take the case from the jury.   It would not do to say that a general contractor, who has charge of a building, and who does some of the work himself, and contracts with others to do other parts of it in and about the building, owes no duty to an employee of a sub-contractor to see that the employees of another such contractor do not by their negligence injure him, if the injury is such as might have been anticipated by the contractor, and he could by reasonable precautions have protected him and others rightfully there.   When laboring men and others engage in work in such places they have no right to expect the general contractor to insure their safety, but they have the right to expect and demand that the contractor will do his part, and will not permit a sub-contractor to carry on his work regardless of the safety of others who have the right to be there.   If it was dangerous to those below to haul the

bricks on a run-way, such as was used, it was the duty of the contractor either to require the sub-contractor to have sufficient protection under the run-way, or to do it himself. So far as the record discloses Brown did all that the appellants required him to do, and the evidence tends to show that the openings were left for their benefit, and that they had a "general foreman carpenter on the work."

It is also settled in this State that an employer will be liable where work is being done by an independent contractor if the injury "be such as might have been anticipated by him, as a probable consequence of the work let out to the contractor, and he took no precaution to prevent it," and, "whether the injury might reasonably have been anticipated as a probable consequence of the work contracted to be done was one of fact for the jury." *P., B. & W. R. Co.* v. *Mitchell,* 107 Md. 600; *Weilbacher* v. *Putts Co.,* 123 Md. 249; and other cases cited in them.

Coming then to the several prayers, considered in the light of the authorities and the facts in this case; the plaintiff's first prayer was as to damages, and we do not understand it to be objected to. We see no valid objection to the plaintiff's second prayer as modified. There was evidence of the facts stated in it, and if the jury believed them, the plaintiff was entitled to recover. We will ask the reporter to publish it. The plaintiff's third prayer, as originally offered, was correct, but we do not understand the meaning of the modification. As offered by the plaintiff, it was as follows: "The plaintiff prays the Court to instruct the jury that if they find the facts stated in the plaintiff's second prayer, then they are instructed that it is no defense to this suit that the brick work for the defendants *was contracted for and done* by one Harry A. Brown under an independent agreement, as testified to by said Brown." The part in italics was added and did no harm, but the Court also added this modification: "provided the jury further find that the injury to the plaintiff was caused solely by the said Brown or his employees in failing to exercise ordinary care in not protecting persons working

on the lower floor from materials that might fall from the other floors and was not caused at all by any want of ordinary care upon the part of the defendants or their employes." That reads as if it was intended to be a modification of some prayer of the defendant, but both the printed record and the transcript have it as a part of the plaintiff's third prayer, and in the absence of some agreement or explanation we must be governed by the record. The effect of the conclusion of the defendant's fifth prayer, which was granted, is not altogether unlike it. This modification might have been used instead of that conclusion, but as it is, the instruction in substance was that it was no defense that the work was done by Brown as an independent contractor, provided the jury found that the injury was caused *solely* by Brown or his employees, "and was not caused at all by any want of ordinary care on the part of the defendants or their employees." Although we have no doubt that that was not intended to be as it is, we can not say that it was not injurious error as the record shows it was granted.

There was no error in rejecting the first, second and third prayers of the defendants, which sought to take the case from the jury, as will be seen from what we have said. The fourth we have already referred to. The fifth was granted with a slight modification, and there was no error in the modification. From what we have said above, it will be seen that in our judgment the sixth, seventh and eighth prayers of the defendants were properly rejected. As to the ninth, it is sufficient to say that requiring the plaintiff to show that the defendants, or their ageents, were working on the third floor at the time the bricks fell was sufficient to make it objectionable. The only error we find is in the modification of the plaintiff's third prayer, and we feel compelled to reverse the judgment for that, but as the plaintiff was not responsible for it we do not deem it proper to place the costs on him.

> *Judgment reversed, and new trial awarded,*
> *the appellants to pay the costs.*