**Lawrence E. Donohue, Appellee, v. George W. Stiles Construction Company, Appellant.**

**Gen. No. 24,169.**

1. MASTER AND SERVANT, § 867*—*when evidence insufficient to show control over independent contractor.* In an action by a post-office employee for damages received by the dropping of a tool by an employee of a subcontractor doing repair work in the post office building, evidence of a government employee that he had heard a man, who might possibly answer the description of the contractor's foreman, give orders to the workmen, *held* insufficient, as against positive testimony to the contrary, to sustain plaintiff's burden of proof that the contractor exercised control over the subcontractor's men.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Donohue v. George W. Stiles Construction Co., 214 Ill. App. 82.

2. MASTER AND SERVANT, § 857*—*when contract insufficient to establish liability for negligence of subcontractor.* Provisions in a contract between a contractor and the government for the remodeling of a post-office building, as to control and liability by the contractor, *held* insufficient to support the rule of *respondeat superior*, in an action by a government employee, injured by the negligence of an employee of a subcontractor engaged in performing the iron work.

3. MASTER AND SERVANT, § 860*—*when general contractor cannot escape liability for negligence of independent contractor.* A contractor engaging to do remodeling in a post-office building under circumstances that imperiled government employees, who were required to continue at work while the alterations were being made, and under a contract with the government which evidently sought to protect such employees, owed a duty to see that adequate protection was furnished them against obvious dangers, and cannot escape responsibility for neglect in that respect on the theory that the negligent act was that of an independent contractor to whom part of the work was sublet.

4. MASTER AND SERVANT, § 1*—*what is test of relationship.* The right to control the negligent servant is the test by which it is to be determined whether the relation of master and servant exists.

5. MASTER AND SERVANT, § 860*—*when existence of relation between contractors immaterial in action for injuries to third person.* In an action by a government employee against a contractor and a subcontractor for injuries resulting from the negligence of an employee engaged in the work of remodeling the government building, it was immaterial which was the employer of the negligent servant if, under the averments, liability arose from the duty of each defendant to afford protection to the government employees under the circumstances.

6. NEGLIGENCE, § 32*—*when falling of tool not within statutory requirement of protection against falling material, etc.* The statutory provision in chapter 48, sec. 1 (J & A. ¶ 5368), requiring certain mechanical contrivances to be so erected as to protect persons passing under or by the same, or prevent the falling of any material that may be used or deposited thereon, has no application to the falling of a tool used by a workman in the process of construction.

7. MASTER AND SERVANT, § 870*—*when instructions on theory of independent contractor properly refused.* In an action against the general contractor by a government employee for injuries received from the negligence of an employee of a subcontractor engaged in remodeling the building, in which plaintiff was required to work while the alterations were being made, instructions resting entirely upon the doctrine of independent contractor were misleading and

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

84    APPELLATE COURTS OF ILLINOIS.

Donohue v. George W. Stiles Construction Co., 214 Ill. App. 82.

properly refused when a duty rested upon the contractor to protect the government employees against the obvious dangers existing in the circumstances under which the work was contracted to be performed.

8. MASTER AND SERVANT, § 870*—*when instruction properly refused on liability of general contractor for subcontractor's negligence.* An instruction that if an injury was due solely to an accident for which the appellant "was not to blame" there could be no recovery, was erroneous, as the phrase "not to blame" gave the jury too much latitude in determining the ground of liability, in an action for personal injuries, defended upon the theory that the one causing the injury was the servant of an independent contractor, especially when no instructions were given relating to a theory that defendant owed a duty to take measures to protect plaintiff from the dangerous manner in which the work was required to be performed.

9. TRIAL, § 102*—*when refusal to strike evidence not error.* Refusal to strike testimony of plaintiff's physician as to examples from surgical textbooks of injuries similar to plaintiff's, as tending to support alleged improbable evidence, that the wrench which fell upon plaintiff penetrated his brain to a depth of 4 inches without causing unconsciousness, was not error when such evidence could not have been harmful, there being no question that plaintiff's injuries, as described, ensued from the accident, whatever the depth of penetration.

10. NEGLIGENCE, § 66*—*when contributory not shown.* In an action by a mail carrier injured by the fall of a wrench during the course of repairs in a post office, contributory negligence on plaintiff's part held not to have been established.

Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1918. Affirmed. Opinion filed April 29, 1919. *Certiorari* denied by Supreme Court (making opinion final).

LANDON & HOLT, for appellant.

FRANCIS J. WOOLLEY and ROST & SMITH, for appellee.

MR. JUSTICE BARNES delivered the opinion of the court.

This is an action to recover for personal injuries brought by appellee Donohue against William W. Horn, and two corporations, George W. Stiles Construction Company, and A. Bolter's Sons. The suit

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

was dismissed as to A. Bolter's Sons, and proceeded to verdict and judgment for $4,500 against the other two defendants, only one of which, the Stiles Construction Company, has appealed.

The Stiles Construction Company contracted with the United States government to make certain repairs in its post office building at Chicago, which included an intermediate floor about 15 feet above the floor in the mail carriers' room, where plaintiff, a mail carrier, was engaged when injured. Said company sublet to A. Bolter's Sons to furnish and erect complete in place all necessary structural steel work in accordance with the specifications in its contract with the government, and the latter corporation sublet the work of erection to defendant Horn. In accordance with these arrangements, all of which were in writing, A. Bolter's Sons fabricated the steel and delivered it just outside the building. Horn, in pursuance of his contract, took the steel from where it was so left into the building and erected it in place. In the course of the work of erection, one of Horn's employees while astride a steel beam that had been put in place to be riveted, dropped a wrench on plaintiff while he in the course of his employment as such mail carrier was passing beneath it. The pointed handle of the tool pierced his skull and a portion of his brain, causing injuries that affected his sight, hearing, memory, nervous system, and capacity for labor for several months.

The original declaration contains two counts, the first charging that the work was negligently conducted by each of the defendants, and the second, that they failed to use or place proper means of protection to avoid injury. Four additional counts aver that the Stiles Construction Company was an original contractor and Horn a subcontractor, and that the former "retained full and complete supervision of the erection of the said iron work," the first two charging the same negligence respectively as the two original

86    APPELLATE COURTS OF ILLINOIS.

Donohue v. George W. Stiles Construction Co., 214 Ill. App. 82.

counts, the third, failure in the duty to give reasonable warnings to the government employees of approaching danger and risk of injury, and the fourth is predicated upon an act to provide for the protection and safety of persons in and about the construction, etc., of buildings, approved June 3, 1907. All counts charge that the acts and negligence were those of each of the defendants through their employees, and that the work of bolting and fastening the steel beams was carried on over the heads of the government employees, including plaintiff, while carrying on their work, and that said employees were required, with knowledge of defendants, to continue their work and frequently pass beneath the construction during its progress.

The defendants filed a plea of general issue, and a special plea, denying possession, control, etc. Horn offered no evidence, and the Stiles Construction Company asked for a directed verdict at the close of the evidence.

1. Appellee urges first that Horn was an independent contractor, and we think the evidence so shows. It is undisputed that the men working on the beams were hired and paid by Horn and worked under the directions of his foreman. The Stiles Construction Company had a superintendent, or foreman, who supervised different work under the contract performed by appellant and who testified, as did Horn's foreman, that he had nothing to do with, gave no directions to, and exercised no control over, Horn's men or the work they were engaged in performing. While one of the government employees, testifying for appellee, said he heard a man (who possibly might answer the description of the Stiles Construction Company's superintendent) give orders to men working on the beams, he did not state what the orders were, and the person giving them was not identified otherwise than

by a vague description. That there were such orders was, in the form stated, a mere conclusion of the witness, and as the burden of proof rested on plaintiff to show appellant's exercise of control, and finds no support except in such testimony, it cannot be deemed of a character to overcome direct and explicit evidence to the contrary by both the company's superintendent and Horn's foreman.

"The right to control the negligent servant is the test by which it is to be determined whether the relation of master and servant exists." (*Pioneer Fireproof Const. Co. v. Hansen,* 176 Ill. 100.) Or, as stated in *Maredosia Levee & Drainage Dist. v. Industrial Commission,* 285 Ill. 68, and *Decatur Railway & Light Co. v. Industrial Board,* 276 Ill. 472: "The principal test as to whether one is an employee or an independent contractor lies in the degree of control retained and exercised by the person for whom the work is being done." We find nothing in the evidence that legitimately tends to show any such supervision or control, or retention of it by appellant as takes the case out of the rule of independent contractor.

Appellee points out, as indicative of such control, various parts of the specifications in the government contract which provide for the supervision of the work by the government custodian of the building; that he "must be consulted as to the time and manner of performing the work"; that "the work shall be done so as to cause the least interference with the public business"; that "no subcontractor or other person furnishing material or labor to the contractor will be recognized"; that the contractor "will be responsible for all damages to person or property which may occur in connection with or incident to the transaction of the work," furnish all labor, materials, tools, scaffolding, "drop cloths, etc.," necessary for the proper execution and inspection of the work, keep a competent foreman or superintendent on the ground at all

times during the progress of the work "to receive instructions and with authority to act for the contractor"; that the government shall reserve certain rights to make changes in the work, to require the contractor to discontinue services of any unskilful or objectionable workman employed on the work, and to suspend any portion of the work when inexpedient to carry it on. Other provisions, less important, need not be referred to.

We think none of these provisions, of itself, supports the rule of *respondeat superior*. We refrain from reciting authorities applicable to each. They may be found in a note on the subject in 65 L. R. A. pp. 475-483. What was said in *Foster v. City of Chicago,* 197 Ill. 264, of very similar provisions in a contract with the city, appears to be applicable here,— that they did not include the direction, management and control by the city of every detail of the work, but only such supervisory power as the city might, from time to time, find necessary to exercise to insure compliance with the contract and to obtain the result called for thereby. The court said: "The difference between an independent contractor and a mere servant is not determined solely by the retention of a certain kind or degree of supervision by the employer." The rule of independent contractor was held to apply.

But appellee urges as reasons why the rule of independent contractor is not applicable: (1) That the Stiles Construction Company was negligent in failing to fulfil its own duties of placing a proper protection under the iron workers against injuries from falling implements or material; (2) that the setting up of the structural iron was intrinsically dangerous to others, and that the original contractor accordingly remained liable for the negligence of those whom it employed to do the work; (3) that appellant covenanted with the government that no subcontractor was to be rec-

ognized, and that it would be responsible for all damages that might occur in connection with the prosecution of the work.

None of these theories was presented in the instructions, and the declaration was apparently framed with a view of asserting the doctrine of *respondeat superior*, for it charges that the acts and negligence were those of defendants through or by their employees, and in that respect is seemingly inconsistent with the theory of independent contractor. But if the failure to prove that the negligent acts were not those of appellant's employees may be deemed a mere matter of variance of which no advantage was taken at the trial, and the averments of fact are sufficient to charge appellant with the duty to protect the government employees, the phrase "by certain employees of the defendants" and similar phrases may be rejected as surplusage; for it matters not whose employees they were, if under the averments liability arose from the duty of each defendant to afford protection to the government employees under the circumstances.

The question is, therefore, whether the case comes within any of the exceptions contended for.

Whether or not the mere chance of dropping a tool, which may be incidental to many kinds of work, comes within the work that may be classified as intrinsically or obviously dangerous, yet taken in connection with the fact that the work of construction was required to be carried on over the heads of the government employees while they continued at their employment, the circumstances present a case of obvious danger to said employees unless precaution was taken against the danger by the use of "drop cloths" or other means of protection. Appellant's contract provided that the work was to be conducted "so as to cause the least interference with the public business," and to be subject to suspension when inexpedient to carry

it on, and that the contractor was to furnish "drop cloths, etc., for its proper execution," and "be responsible for all damages to person and property which may occur in connection with the prosecution of the work." These and other provisions apparently contemplated the use of the premises by the government employees while the construction was going on and a consequent duty of protecting them against any obvious danger therefrom; and to some extent the contract seems to have been made for their benefit, for while the government itself could not be sued for damages to its employees resulting from the construction over their heads, it required them to continue work under conditions from danger of which it evidently sought to protect them, and appellant knew of these conditions and of the danger to the employees under such circumstances unless due precaution was taken.

We recognize that nice distinctions are made in this class of cases, and the decisions are so numerous and variant as to render it difficult to state in what particular category they belong. Some lay stress upon the quality of the work which is characterized variously as "intrinsically," or "inherently dangerous," "dangerous in itself," "in its nature dangerous to others," "which in the progress of its execution obviously exposes others to unusual peril." Others speak of "where the work will result in injury to others, etc." or "will probably be injurious," or where "injury may be anticipated as a probable consequence," or will arise "in the natural course of things," or as "liable to result in injury," or, in language of our own Supreme Court, as "necessarily dangerous, and the natural consequence of which is an injury to the person or property of another." (*Village of Jefferson v. Chapman*, 127 Ill. 438; *City of Joliet v. Harwood*, 86 Ill. 110; *Chicago Economic Fuel Gas Co. v. Myers*, 168 Ill. 139.) These cases extend over a wide field of

conditions, from situations of "probable danger" to those "liable to result in injury."

It would expand this decision to unnecessary length to note their varying features and the distinctions that may be drawn from them. A thorough review of them will be found in an instructive note in 65 L. R. A. p. 833 *et seq.* As stated by the author of the note, cases near the border line will always continue to be a source of embarrassment, and this seems to be one of them. Without dilating further upon the doctrine of the duty of the original contractor to protect against obvious danger from performance of the work he sublets, we shall content ourselves with referring without discussion to some authorities that tend to support our conclusion that appellant, having contracted with the government to do the work under circumstances that imperiled the safety of others unless precautions against danger were taken, owed a duty to see that adequate protection was furnished against obvious dangers, and cannot escape liability for neglect in that respect on the theory that the negligent act was that of an independent contractor. *City of Chicago v. Robbins,* 2 Black (67 U. S.) 418, 427; *St. Paul Water Co. v. Ware,* 16 Wall. (83 U. S.) 566; *Wilson v. Hibbert,* 194 Fed. 838, 114 C. C. A. 542; *Smyth v. City of New York,* 203 N. Y. 106; *Henry Pierson & Sons v. Gohr,* 126 Md. 385, 400.

We quote with approval the doctrine as stated in the last cited case:

"An employer will be liable where work is being done by an independent contractor if the injury 'be such as might have been anticipated by him, as a probable consequence of the work let out to the contractor, and he took no precaution to prevent it,' and 'whether the injury might reasonably have been anticipated as a probable consequence of the work contracted to be done was one of fact for the jury' " (p. 400).

What we have said dispenses with the necessity of

considering the effect of appellant's covenants in its contract with the government. As to any other covenant than the covenant of indemnity for damages resulting from the prosecution of the work, we think appellee's position is untenable. While there may be doubt as to the effect of the covenant of indemnity, whether it inures to the employer alone and confers no right of action upon any one else, it is unnecessary to decide the point if the view we have taken of the case is tenable. We think, however, there is room under the circumstances of the case to hold that the covenant of indemnity was for the benefit of the government employees. (*Smyth v. City of New York*, 203 N. Y. 106.) But we do not rest our decision on this point.

Nor do we think that there was liability under the statute pleaded in the fourth additional count (chapter 48, par. 5368, Ill. Stat. Ann.), requiring certain mechanical contrivances to be so erected, etc., as to give proper protection to persons passing under or by the same. We think it has no application to the falling of a tool used by a workman in the process of construction.

2. As to the instructions. Instructions numbered 37 to 41, inclusive, rested upon the doctrine of independent contractor and entire absence of control by the original contractor. If, as we have concluded, a duty rested upon appellant to protect the government employees against obvious danger in circumstances under which the work was contracted to be performed, then appellant's tendered instructions on the broad rule of independent contractor were misleading in ignoring that exception to the rule. (*City of Chicago v. Robbins*, 2 Black [67 U. S.] 418, 429.) While two other instructions, numbered 43 and 44, in our opinion, correctly stated the law, they were properly refused for the same reason. No. 43 told the jury that the provision in regard to supervision in the government contract had no relation to the control or direction of the

general contractor of the manner of doing the work by the subcontractor, and No. 44 told the jury that the general provisions in the contract that the government would not recognize a subcontractor or persons furnishing material or labor to the contractor did not alter the law that a general contractor is not liable for the negligent acts of the subcontractor or his men. Each of them is predicated solely upon appellant's not having exercised control over the men setting the iron, and therefore ignores the application of said exception.

Instruction No. 29 told the jury that if the injury was due solely to an accident for which appellant "was not to blame," there could be no recovery against him. The court modified it by making it applicable to both defendants. But both as tendered and given, we think the phrase "not to blame" gave the jury too much latitude in determining the ground for liability, especially in the absence of instructions relating to the theory of liability we have above discussed.

3.   Appellant urges error in the refusal of the court to strike the testimony of plaintiff's physician "that the textbooks on surgery quote examples of many who have survived such accidents and many who have remained conscious after many similar injuries." It is contended that this evidence was harmful because it tended to support evidence for plaintiff—which appellant calls improbable—that the wrench handle penetrated plaintiff's brain 4 inches without causing unconsciousness. If this evidence should have been stricken, yet as it does not appear to have been questioned that plaintiff's injuries, as described, ensued from the accident in question, whatever was the depth of such penetration, we fail to see that the evidence was specially harmful.

4.   On the point of contributory negligence, it is enough to say that under the peculiar state of facts

we think that so far as the verdict of the jury touches that question it should not be disturbed.

The judgment will be affirmed.

*Affirmed.*