### Clendenin v. Colonial Supply Co., Inc.
(Decided March 5, 1937.)

CLAUDE HUDGINS for appellant.

DAVIS, BOEHL, VISER & MARCUS and R. P. HOBSON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—Affirming.

The appellant, who was the plaintiff below, brought this suit in the Jefferson circuit court against appellee, defendant below, to recover damages for personal injuries. At the close of the evidence for the plaintiff the court peremptorily instructed the jury to find a verdict for the defendant, and, from a judgment entered on that verdict dismissing plaintiff's petition, he has prosecuted this appeal, insisting that the evidence was sufficient to take the case to the jury and the court erred in sustaining defendant's motion for a directed verdict.

A determination of this question requires a resume of the facts and evidence. We will refer to the parties as plaintiff and defendant according to their status in the lower court.

The Andrew-Collings Asphalt Company, a corporation (hereinafter called the Asphalt Company), was engaged in the business of manufacturing asphalt for street and road construction, etc. It owned and operated an asphalt plant in the city of Louisville, where the asphalt was treated, heated, and loaded into trucks to be delivered to the place of construction.

The defendant, Colonial Supply Company, was a separate corporation engaged in the business of operating trucks for hire in hauling and delivering supplies or other merchandise, etc., in the city of Louisville and Jefferson county, Ky. The Asphalt Company had hired two of defendant's trucks, including drivers,

referred to in the record as trucks No. 11 and No. 12, to haul or transport asphalt for it from its plant to a point in Louisville for street construction work, and, while engaged in loading and removing trucks from the asphalt plant, plaintiff was caught between two trucks, resulting in his injuries complained of. Plaintiff states his cause of action in the following language:

"* * * That the defendant, Colonial Supply Company at said time and place was engaged in handling two trucks number 11 and number 12 owned and operated by the Colonial Supply Company, its agents, servants and employees, that the plaintiff was behind truck number 11 engaged in the performance of his official duties as employee of the Andrew Collins Asphalt Corporation, inspecting and checking supplies delivered and removed by the defendant, Colonial Supply Company, to and from plaintiff's employer, Andrew Collins Asphalt Corporation, and fastening the rear gate of defendant's truck, that, said truck number 11 was standing still at the said time in the yards and at the place of business of the Andrew Collins Asphalt Corporation, that without warning to the plaintiff the defendant, Colonial Supply Company, its agents, servants and employees in charge of truck number 12 at said time and place did with gross carelessness and negligence and without warning to this plaintiff run said truck number 12 into this plaintiff knocking him up against truck number 11 with great force and violence thereby painfully and seriously injuring this plaintiff. * * *"

He described his injuries as being very serious and painful and alleged that same was caused by the negligence and carelessness of defendant, its agents and servants, in operating its said trucks.

The defendant filed its answer, the first paragraph of which consisted of a traverse, and by paragraphs 2 and 3 respectively it pleaded contributory negligence and assumed risk, and the affirmative pleas of the answer were traversed by reply.

Apparently the court sustained the defendant's motion for a directed verdict in its favor upon the theory that under the peculiar facts and circumstances of the case the drivers of defendant's trucks were not

in that particular instance and for the time being the servants of defendant—they being subject to the orders, direction, and control of the Asphalt Company, and were being directed by the plaintiff, who was the Asphalt Company's foreman, and in charge of the operation of the truck at the time he received his injury. Plaintiff on direct examination testified that he was the employee of the Asphalt Company and was "kind of a straw boss over there—over the men around the plant —just a straw boss," and his duties consisted in looking after the plant and getting out the asphalt. He described the manner in which his injury occurred substantially as set out in his petition quoted above. He further testified in substance that truck No. 11 had been filled with asphalt and the rear gate of the truck had become unfastened and he placed an iron bar against the end of the gate and motioned to the driver of truck No. 12 to back his truck against the iron bar in order to close the gate, which was done. He then stepped between the two trucks and was removing some loose asphalt from the other end of the gate on truck No. 11, preparing to close it, and before he had removed the loose asphalt and before giving any signal to the driver of truck No. 12, the driver backed the truck against him and caught him between the two trucks. He said he was out of sight of the driver but the driver saw him close the gate on the other side of the truck and knew he was going through between the trucks. He said that he gave the order to Roby, the driver of truck No. 11, to come out "of the hole [meaning from under the hopper where the asphalt was being put into the truck] and pull out on the level ground," and he told Powell, driver of truck No. 12, to back up and close the gate on truck No. 11, as we have stated above.

On cross-examination plaintiff testified that as the "straw" boss of his employer, the Asphalt Company, he had charge of all the men around the plant and directed the moving of the asphalt and the operation of the trucks. For a clear conception of plaintiff's evidence in respect to his authority, and on the question as to whether the drivers of defendant's trucks were, in the circumstances and in the performance of their duties at the time plaintiff was injured, the servants of defendant as an independent contractor, or employees of the Asphalt Company, we quote from the evidence of plaintiff as follows:

"I believe you had charge of all the men around the plant there, Mr. Clendenin, is that right —the drivers and Franklin and those men? A. I had charge of them as a straw boss. I could not fire one. If I would fire one, he would go over to the other side and they would send him back.

"What I mean is this: Whatever orders you gave around there to Powell or Roby, they obeyed, didn't they? A. Well, they were supposed to.

"And had for many days before that? A. Well, yes, sir.

"They did on this occasion, didn't they? A. They did—yes, sir.

"Now, Mr. Clendenin, you also—you tell the men where to take the loads of asphalt or binder as the orders come in? A. It was up to Ray Bryant, I, or Maas.

"One of the three of you, when you were there and present and get an order over the telephone, you would go out and tell the drivers what to get and where to take it? A. Ray Bryant would receive the orders over the telephone, and he would take orders from the trucks and he made the tickets and told the driver where to go. I would tell the mixer man what to put in his truck, if Ray Bryant was not there or Maas was not right there handy, I would tell the driver where to go.

"And tell him what to get and put in his truck? A. Yes sir.

"It was your job? A. I would tell the mixer man what to put in the truck.

"It was your job to see the material was delivered and delivered promptly and that the trucks got back quickly? A. It was my job to get the stuff out away from the plant. If I did not, get out myself. I had to rush that—see that the stuff was got out of there.

"You would tell the men to rush and rush back as quickly as possible? A. I would ask them to hurry back. * * *

"It was your duty, of course, to get the trucks

out of the yard, to find out why they did not get back in time and rush them and crowd them along—that is correct is it not? A. That is right.''

Plaintiff introduced Walter Carter as a witness in his behalf, and Carter testified that he was an employee, a yard foreman of defendant company, and that Roby and Powell, drivers of the two trucks in question, were working for the defendant, Colonial Supply Company, and were paid by it. His statement that the drivers were working for defendant company was objected to as a conclusion of the witness, and the court sustained the objection, which we think was proper. He was cross-examined concerning the employment of defendant's trucks and drivers and testified that defendant company frequently rented trucks and drivers to the Asphalt Company for hire on a per hour basis and the driver was paid by defendant company; that the Asphalt Company had nothing to do with paying the driver; that, when orders came in from the Breslin people (another concern which hired trucks and drivers of defendant company), he, witness, as foreman of the defendant company, would instruct the driver to report to the Breslin place, and the driver would do whatever the Breslin people told him to do, and that the same thing applied with reference to driver and trucks hired by the Asphalt Company, and, when they were there, they did whatever the Asphalt people told them to do; that plaintiff was a yard foreman for the Asphalt Company, and was superior to the truck drivers and the workers at the plant. The last statement of the witness might have been a conclusion, but it was not objected to.

It will be seen from the evidence of plaintiff and his witness Carter that plaintiff, as a foreman of the Asphalt Company, was in charge of the trucks and drivers and giving orders and directing the manner and performance of the work.

It is argued for plaintiff that the facts brought out on cross-examination of plaintiff and his witness Carter related to new matter not connected with the direct examination, and the court should not have considered the evidence adduced on cross-examination as that of the plaintiff, but in reality was defendant's evidence. Plaintiff alleged in his petition that his injuries were brought about by the carelessness and negligence of the

employees and servants of the defendant company, and this allegation was denied in defendant's answer, and plaintiff and his witness Carter were both interrogated on direct examination concerning the drivers of the trucks and for whom they were working. It will.be seen that the cross-examination complained of was direct in point to the issue made by the pleadings and also in furtherance of the matters referred to in the direct-examination; and, further, plaintiff introduced all. his proof and closed his case. The court then had the right to determine from all the evidence whether plaintiff had sustained the burden of establishing any liability of defendant.

It is insisted for defendant that this case is controlled by the rule enunciated in the case of Bowen v. Gradison Construction Company, 236 Ky. 270, 32 S. W. (2d) 1014, 1015, and cases cited therein.

For a clear statement and conception of the facts of the Gradison Construction Company Case, supra, and the law applied thereto, and to show the similarity existing between that case and the present case, we quote from that opinion as follows:

"This accident occurred on Saturday, April 24, 1926. The truck involved belonged to James Richards. It was driven by his son, Owen Richards. This truck was hired to the Gradison Construction Company upon these terms.

"Richards furnished his truck and the driver, oil, gasoline, and everything else necessary for its operation, and the Gradison Construction Company paid him $2.50 an hour for its use. Richards hired and paid this driver, and Gradison Construction Company had no right under the contract to discharge him or put upon this truck a driver of their selection, but they had the right to send the truck home and terminate this contract when they chose. The Gradison Construction Company directed the loading, unloading, and operation of this truck."

Discussing the law applicable to these facts, the court said:

"[b] Had the Gradison Construction Company such control over it as made it responsible for that negligence?

"The trial court gave a negative answer to question [b], and hence did not answer question [a]. [Not involved in the present case.] We find both questions should be answered in the affirmative. When the Gradison Construction Company made this contract with Richards, it, in effect, said to him: 'Your driver shall be our driver and your truck, our truck, so long as we shall both be pleased.' The pronoun 'our' is used here to refer to the Gradison Construction Company alone, and not to it and James Richards."

And further quoting from that opinion:

"We grant that ordinarily Owen Richards was the servant of James Richards, but a servant may be loaned or hired by his master for some special purpose so as to become, as to that service, the servant of the party to whom he is loaned or hired, and this is true even though the servant is selected, paid, and may be discharged by the original employer. 39 C. J. 127, sec. 1462. The test turns on who controls the servant in the named employment.

"Here the construction company hired from Richards a truck and a driver; they were hired as an entity; neither could be retained or discharged alone. This entity was hauling material belonging to the construction company, to be used in the making of a street the construction company was building, and the question is: Was Owen Richards then the servant of his father, James Richards, an independent contractor, as Givans was the servant of Berry & Kelly, or was he the servant of the construction company? We are not interested in whose servant he was ordinarily, but whose servant was he while on the job at work under this contract? Who was then his master?"

And further said the court:

"An 'independent contractor' is one who is doing his own work in his own way. We have said his own work, and mean by that he must have under the employment some particular work assigned to him; that is, he must have some particular task he has a right to complete and an obligation to complete, and he must be subject to no control in the details of its doing. Other and fuller definitions

will be found in See v. Leidecker, 152 Ky. 724, 154· S. W. 10, and Louisville & Nashville R. R. Co. v. Smith's Adm'r, 134 Ky. 47, 119 S. W. 241. Who selects the servant, and who pays him, are of such minor importance in comparison to whose work is being done and who has the power to direct it, that this record presents no question of independent contractor.''

In the case supra it was held that Richards was not an independent contractor and that the driver of his truck in the circumstances of that case was the servant of the Gradison Construction Company, and it, not Richards, was responsible for the acts of the driver.

Applying the same reasoning to the present case, the Asphalt Company had no right to discharge the driver of defendant's trucks and hire a driver of its own selection and put him in charge of the truck; but, the employment of defendant's trucks being on the hour basis, the Asphalt Company had the right to terminate the contract at any time and thereby discontinue the services of the trucks and drivers as an entity, which power was equivalent to the power to ''fire'' them. But, be this as it may, as pointed out in the case supra, the test of an independent contractor is not measured alone as to who has the right to hire and fire, but whose work is being done and who has the power to direct it.

It is shown conclusively by the evidence of plaintiff and his witness that the Asphalt Company was in charge of the work being done by defendant's trucks and drivers and was directing it. The same situation and rule obtains as if the Asphalt Company had hired an individual with his truck to perform the work under its direction and control. In such case it could not be said that the Asphalt Company was not the employer and the driver its employee. Nor is it material that the defendant, owner of the trucks, was a corporation. A corporation may be subject to hire the same as is an individual or natural person, and a hired corporation, of course, performs the services hired to be done, through and by its agents and employees. But, when the hiring corporation has direction and control of the servants of the hired corporation in the performance of the work, such servants become the servants of the hiring corporation, and the simple rules of master and servant are applicable.

Appellant cites and relies upon the case of Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480, and certain other cases. The Standard Oil Company Case is distinguished in Bowen v. Gradison Construction Company, supra. An examination of other authorities relied on discloses that the facts of those cases are not in point with the facts of the case at bar and do not sustain plaintiff's argument.

The facts disclosed by this record, viewed in the light of the authorities cited herein, impel us to the conclusion that this case is controlled by Bowen v. Gradison Construction Company, supra, and that the court committed no error in directing a verdict for the defendant.

The judgment is affirmed.