# Grubb v. Coleman Fuel Co.

(Decided March 1, 1938.)

GOLDEN & LAY for appellant.

WALTER B. SMITH and HARRIS W. COLEMAN for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appellant, Walter Grubb, has sued the appel-

lee, Coleman Fuel Company, for damages resulting from the loss of his eye. The defendant had not elected to operate under the Workmen's Compensation Act, Kentucky Statutes, sec. 4880 et seq. On a trial before a special judge, two issues were submitted to the jury, one of which was whether Obie Stewart, whose act caused the injury, was an employee of the defendant, and the other whether that act constituted negligence. The verdict was for the defendant.

Each miner was assigned a number and given metal discs showing same. They would be hung upon the cars he had mined and loaded to identify them. When the coal was weighed at the tipple, he would be credited with the tonnage and paid accordingly. It appears that two men were assigned to a certain room or space and it was regarded as their exclusive privilege to work there for the time being. The record does not show that Stewart had worked in this mine before he was given his numbers and assigned a place on the fourth entry by the president of the company two or three weeks before the accident. However, when he went to the place he found that the foreman had previously given it to Collis and Obie Stewart. They permitted him to work with them four or five days. He then asked Jackson, the foreman, if he had any other place for him and Jackson responded, "No, if you can find any place it is more than I can do; it is all right with me if you can find a place." That evening Stewart asked Grubb and Hoskins, who had been assigned to the third right entry, to let him work with them. They at first refused, but consented the next day when Stewart again asked to be permitted to work with them for a few days, and said he would work for enough coal to average him $2 a day until the place which the boss had given him was turned loose. They agreed to allow him to put his numbers on enough cars of coal to make $2 a day. He did this and received credit on the books of the company and was paid accordingly. Stewart had been working in this place with these men, as was known to the foreman, five or six days before the accident happened. As we understand, Grubb and Hoskins were receiving yardage also. This is compensation measured by the number of yards mined out and was in addition to the tonnage. But Stewart did not ask for any of this pay, although he helped to drive the entry.

C. R. Coleman, the president of the company, testified that men were employed by himself or his foreman, and that he did not know just who was working in the mine as some of the men were in and some out part of the time. They would get their numbers from him before he would let them go to work. Those who had numbers were employed in the mine if they had a place for them, and sometimes they would be out for a week or two. No one was supposed to have a number except those to whom he had given it, but many did not return their tags when they quit. It is significant, we think, that Stewart had received his number only a short while before this accident. Over objection of the plaintiff, Coleman testified that he did not know Stewart was working for the company and that he was not an employee at the time. However, he testified to having given him a number and telling him he could have a place on the fourth panel entry, but that the foreman had assigned that place to another so Stewart was out of work. Notwithstanding this testimony, the witness stated that at the time Stewart's name was on the company's books and he had been given credit for the coal he had mined with Grubb and Hoskins and had been paid for it. The company had the right to discharge any man working in the mine. After the accident, he had heard Grubb say that he had an agreement with Stewart to allow him to load $2 worth of their coal a day "working for them."

Jackson, the foreman, testified that he had directed Stewart to work in the fourth panel and had not assigned him to work with Grubb and Hoskins. He had visited the mine daily, however, and had seen Stewart working with those two men. He had no objection to this; never told Stewart to get out; and treated him like any other employee. It was the custom in the mine and among the workmen to trade jobs and go from one place in the mine to another. Stewart had worked in mines for sixteen years and as a miner and coal loader for five years. Jackson testified that he was a good loader.

At the time of the accident, Grubb, Hoskins, and Stewart were engaged in loading a car in the mine. Grubb had said that he would load the front end and told Stewart he could load the back end. They were on opposite sides of the car, one near the front and the other at the back. When the car was level full,

Stewart threw a shovel of coal toward the front, which went too far and landed at the opposite side, part of it falling on the car and part of it off. Some of the coal struck Grubb in the face. He got some particles about the size of a pencil point out of his eye. He reported the accident the next day to Mr. Coleman, who put some medicine in his eye for several days, according to Grubb. Mr. Coleman, however, states that it was several days later when he happened to see Grubb, who apparently was suffering with his eye, and he suggested that if he would come to the office he would put something in it to prevent infection. A day or so later he advanced enough money to Grubb to enable him to visit some doctors. The doctors testified the loss of the sight was caused by traumatic injury.

On the question of Stewart's relation as servant and the defendant as master, the evidence, in short, is that he was employed by the company to work when there was a place for him and was to be paid according to his output. Because there was no special place for him at the time, he was working with two other employees, with the acquiescence of the company, under an agreement that, except to the extent of earning $2 a day to be paid him by the company, he would give those men the benefit of whatever work he did worth more than that amount. He could have been discharged by the company at any time and put out of the mine. He was recorded on the books and paid by the company for his reported output.

The appellant's argument is that there was not a scintilla of evidence against his contention to take this question to the jury; that the verdict is flagrantly against the evidence; and was induced by the admission of the opinion of Coleman that Stewart was not an employee of the company at the time which he contends was incompetent. The same contention of being flagrantly against the evidence is made as to the issue of negligence.

The question of whether Stewart was an employee or not was to be submitted to the jury for its conclusion. Whether a man is an employee or not so as to bind another by his act is a legal question, the facts, if in conflict, being for the jury to determine. But in common parlance and talk among laymen, whether one is an

employee or not is simply whether he has been hired. This was doubtless what the witness meant and the jury understood. Having related the facts and transactions, we do not deem it error for the court to have failed to exclude the statement.

The question was whether Stewart at the time had the legal status of a servant of the defendant company or of Grubb and Hoskins, operating as independent contractors. There was really no conflict in the factual evidence showing Stewart to have been the servant of the defendant. We think the appellant's claim that the verdict on this point is flagrantly against the evidence is good. Interstate Coal Company v. Trivett, 155 Ky. 795, 160 S. W. 731; Borderland Coal Company v. Small, 160 Ky. 738, 170 S. W. 8; Bon Jellico Coal Company v. Murphy, 161 Ky. 450, 171 S. W. 160; Summerville v. Waller, 262 Ky. 343, 90 S. W. (2d) 65; Clendenin v. Colonial Supply Company, 267 Ky. 544, 102 S. W. (2d) 992; Klein v. Lakes, 269 Ky. 43, 105 S. W. (2d) 1041.

On the question of negligence, we reach the same conclusion. It must be remembered that since the defendant was not operating under the provisions of the Workmen's Compensation Act it cannot rely upon the defense of the fellow-servant rule. Section 4960, Kentucky Statutes.

The appellee submits that since the appellant offered the instructions which the court gave, as to whether Stewart was the employee of the defendant, he invited the error, if any, and cannot be heard to complain. The appellant is not complaining of the instructions or of the submission of the issue. It was a concession that there was a scintilla of evidence or enough to take the case to the jury, but under our rule of long standing a verdict may be set aside as flagrantly against the evidence even though the question should have been submitted. We do not think the appellant is estopped to make the point.

No other question than those decided is passed upon.

**Judgment reversed.**