## McLellan v. Brown.

(Decided Oct. 18, 1938.)

31

RODES & WILLOCK for appellant.

E. BERTRAM and J. G. SMITH for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The appellee, Frank Brown, was injured by the overturning of a dump truck he was driving and operating on road construction work and recovered judgment for $6,259, against the appellant, J. B. McLellan. His cause of action is upon the alleged violation of the law that requires a master to exercise ordinary care to provide his servant with a reasonably safe place to work and equipment to do the work with. In addition to a denial of negligence, the defense was that Brown was not an employee of the defendant but of an independent contractor, Roy Emmick. The instructions, however, were predicated upon the assumption or finding as a matter of law that the plaintiff was an employee of the defendant, McLellan. The instructions are grievously

erroneous in several particulars, but we deem it necessary to consider only their peremptory effect.

McLellan had a contract with the State Highway Commission for the construction of certain streets in Albany. He was required by the contract to use laborers certified or assigned by the federal agency dealing with the unemployment situation, with which agency Brown was registered, and to pay the wages stipulated by it. McLellan sublet to Emmick the contract of grading, and, specifically, for the disposal of the waste material, on a cubic yardage basis. By this subcontract Emmick bound himself to furnish all necessary equipment and labor. The dump truck causing plaintiff's injury was owned by Emmick. Referring to the general contract with the Highway Commission, it was provided that Emmick "is to abide by the rules and regulations that govern this contract regarding labor, etc." McLellan agreed to pay Emmick's laborers and deduct the amount from the payments to him on the contract. It is not claimed that the work was done otherwise than as provided by this contract except as Brown's testimony might tend to show that McLellan assumed to do the hiring and had reported the employees' time or the number of man-hours used on the job to the federal employment agency and the State Highway Commission.

Brown's testimony, first, is a general statement that he was employed by McLellan. He was given a card by the reemployment office for the work on this project and went to see McLellan before the work started. McLellan looked at his card and told him he would have to have it before "he could hire me." About the time the work began he saw McLellan and he said "he would try to use me." When he again approached McLellan he asked about his experience in driving a truck and told him to report for work at one o'clock the next day to drive a 1½ ton Chevrolet truck, and suggested that he ride a few loads before he went to work with Manifee Dick. Brown did so and became Dick's alternate in driving the dump truck hauling waste dirt from the grading to the designated place. While dumping the dirt the truck turned over, due, as it is claimed, to its defective condition, and seriously injured Brown. The evening he began work Emmick asked where "the boy was that was going to work." Brown identified himself as the one and Emmick showed

him the truck. Another worker, a witness for the plaintiff, testified that a short time after the accident he was put to work on the same truck. The foreman on the WPA job of making a fill, which was a project separate from the street construction, testified McLellan arranged with him to place the excavated material there.

McLellan testified that he had asked permission to have the dirt placed on the fill. He received credit on his general contract for the employment by Emmick of Brown with other PWA men. But he had not employed any of them; had no interest in them or in the truck involved in the accident. It belonged to and was under the control of Emmick according to the terms of his subcontract. McLellan denied having employed Brown, saying that when he came to him he told Brown he didn't hire any truck drivers but he could see Emmick, who was going to start work, and he might give him a job. He never exercised any control over Brown or the work he was doing. Emmick turned over the time of his men to him and he reported it to the engineer who made up the pay roll. He paid the men as provided in the contract, charging the amounts up to Emmick. Emmick testified that he employed all the labor used on his portion of the job, the cards of the men coming to him from the federal employment agency. Brown talked with him about a job and the first day he needed a truck driver he hired Brown and put him to work on this truck, which he owned, under the direct supervision of his own foreman. He was under Emmick's control as was all the work of removing the material and placing it on the fill. Emmick kept a record of the men's time, reported to McLellan, who in turn reported it to the federal agency, and paid the men. Dick, who operated the truck alternately with Brown, testified that when he went to McLellan he was referred to Emmick, who gave him a job. Green, the foreman, testified that he was present when Emmick hired Brown and that he showed him what to do and how to do it.

It appears very definitely from the contracts that Emmick was an independent contractor and that if anyone was liable to Brown for damages it was Emmick and not McLellan. The fact that McLellan may have located the place where the dirt should be dumped does not change Emmick's status. Thus it was held in Johnson v. Byrne & Speed Coal Corporation, 271 Ky. 216,

111 S. W. (2d) 671, that a truck owner contracting to deliver coal for a company which had no control over him or his driver except to direct the latter where to get the coal and where to take it was an independent contractor so that the company was not liable for injuries to one struck by the truck. That McLellan was the principal contractor for the work and responsible to the Highway commission for its full performance does not make him ipso facto liable for an act of his subcontractor, if, as a matter of fact, the latter was independent. The full consideration of this subject in H. H. Miller Construction Company v. Collins, 269 Ky. 670, 108 S. W. (2d) 663, makes it unnecessary to do more than refer to it. There it was sought to hold a general contractor for the construction of a highway liable for damages alleged to have been caused by the obstruction of a stream by material thrown therein during the operations of a subcontractor in grading the road. We held a peremptory instruction for the defendant, the general contractor, should have been given. That McLellan was responsible under his contract with the Highway Commission to see that so many men should be taken from the unemployment rolls of the federal agency and was required to make reports thereof, did not constitute his subcontractor his agent for whose negligence he was responsible. Thus in Ballard & Ballard Co. v. Lee's Adm'r, 131 Ky. 412, 115 S. W. 732, it was held that though a general contractor had general superintendency over the work to see that it was properly done according to contract, such fact did not make him liable for the negligence of one who furnished his own assistants and exercised his own judgment as to the manner of doing the work according to the plans previously given him by the contractor. Nor did the fact that he advanced the pay roll pursuant to the agreement—a conduit through which Emmick paid his men—together or singly convert him into the master. Borderland Coal Company v. Burchett, 193 Ky. 602, 237 S. W. 663. See, also, Bellamy v. F. A. Ames Company, 140 Ky. 98, 130 S. W. 980; Structure Oil Company v. Chambers, 208 Ky. 30, 270 S. W. 458; Dempster Construction Company v. Tackett, 215 Ky. 461, 285 S. W. 191; Bowen v. Gradison Construction Company, 236 Ky. 270, 32 S. W. (2d) 1014; Atlas Coal Company v. Bryant, 263 Ky. 626, 93 S. W. (2d) 5.

It was quite natural for Brown to believe that he

was working for McLellan because his checks and not Emmick's were received for his wages. It is not overlooked that he testified that he was employed by McLellan. Such general statement, however, must be considered in the light of and be qualified by the relation of the facts. Grubb v. Coleman Fuel Company, 272 Ky. 847, 114 S. W. (2d) 477. The evidence of fact is merely that McLellan told him he would give him a job and to report for work. It stops there. It is then developed with certainty and without contradiction that he went to work for Emmick driving Emmick's truck.

The case is distinguishable from Ruth Brothers v. Roberts, 270 Ky. 339, 109 S. W. (2d) 800. An employee of one appearing to be a subcontractor on highway construction work, under a general contract which seems to have been the same as the one in the instant case, was killed. His family succeeded in their claim against the principal contractor for compensation under the Workmen's Compensation Act, Kentucky Statutes, section 4880 et seq. It was noted in the opinion that the statute makes both the principal contractor and an intermediate or subcontractor liable for such compensation for injuries or death of one engaged on the job, so that the doctrine of an independent contractor no longer applies, provided the claim is in the first instance made against the immediate employer or against him and the principal contractor jointly. The decision affirmed the finding of the Compensation Board that the principal contractors were liable not only because of the terms of the statute and the limitations on the authority of the courts to review the conclusions of the board, but also upon the ground that the written contract between Ruth Brothers, the principal contractors, and Zando, the subcontractor, was not so explicit as to make Zando an independent contractor, and there was evidence that Ruth Brothers did in fact employ and select the men, assign them to work, had them report to their superintendent, and furnished the material with which they labored. The contract between McLellan and Emmick is very explicit and we do not read the evidence as showing its operation or performance was different from the terms specified. Our conclusion is that the court should have directed a verdict for the defendant.

Wherefore, the judgment is reversed.