**Maude Rhody COTTON et al., Appellants,**

v.

**W. C. HENGER, d/b/a Henger Construction Co., et al., Appellees.**

**No. 15287.**

Court of Civil Appeals of Texas.

Dallas.

Feb. 21, 1958.

On Rehearing March 21, 1958.

Further Rehearing Denied April 18, 1958.

Burford, Ryburn & Ford, Clarence A. Guittard and H. Sam Davis, Jr., Dallas, for appellants.

Allen Wight, Touchstone, Bernays & Johnston, Robertson, Jackson, Payne, Lan-

caster & Walker, D. L. Case and Fred H. Benners, Dallas, for appellees.

DIXON, Chief Justice.

On June 21, 1946 a gas explosion occurred in the basement of the Baker Hotel in Dallas, Texas, killing and injuring a number of persons. The explosion took place in an area where construction work had been in progress for about ten months involving extensive repairs, alterations, and additions to the Hotel's storerooms, kitchen, refrigerators, and other facilities. There is evidence that the explosion was caused by a leaky gas line installed in connection with the construction work.

Following the explosion 20 suits for damages involving 83 plaintiffs were filed against the Contractor, W. C. Henger, doing business as Henger Construction Company. Each plaintiff alleged that the explosion was caused by the Contractor's negligence. Eight of these suits are death cases; the other 12 are personal injury cases. Since the issues as to liability are alike in each of the 20 cases, the suits have been consolidated. For purposes of this appeal, the parties have agreed that only the pleadings in the original cause of Cotton v. Henger need be included in the record.

William Eaton Cotton was killed in the explosion. He was an employee of the Baker Hotel. Texas Employers Insurance Association carried workmen's compensation insurance on the employees of the Hotel, and has paid to Maude Rhody Cotton and William Eaton Cotton, Jr., widow and minor son of the deceased, a total sum of $7,200, the amount of the benefits due under the insurance coverage. Thereafter Maude Rhody Cotton, William Eaton Cotton, Jr., and Mildred Lee Cotton, mother of deceased, instituted this negligence action for damages against the Contractor. Texas Employers Insurance Association intervened to recoup for benefits paid to Maude Rhody Cotton and William Eaton Cotton, Jr.

The defendant W. C. Henger answered, denying that he was an independent contractor and denying that he was responsible for the explosion. In particular he denied that he was an independent contractor with reference to the plumbing work, that work having been let by the Hotel itself directly to William Pitt Martyn, who installed the gas line where the explosion is alleged to have occurred.

The plaintiffs did not make the Hotel a party defendant. They sued only Henger. However the Hotel was made a third-party defendant by Henger, who asked judgment over against the Hotel in the event judgment should be rendered against him. It is Henger's claim that under the terms of his contract with the Hotel he is entitled to judgment that cross-defendant Baker Hotel discharge directly any judgment recovered against him herein.

The Hotel replied to Henger's third-party action with a plea in abatement and an answer to the merits.

On June 4, 1954 defendant Henger filed a motion for summary judgment. He alleged that, as related to the construction work being done, he was an agent and employee of the Baker Hotel within the meaning of Art. 8306, sec. 3, Vernon's Ann.Civ. St., and that since plaintiffs' decedent was also an employee of the Hotel, plaintiffs had no cause of action against him, the defendant. Henger also asserted in his motion that he was not an independent contractor on the job, did not have control of the premises in question; and in particular did not have control or supervision of the plumbing work being done, or the installation of the gas line which plaintiffs say was defective in that it leaked gas.

On November 15, 1956 the trial court sustained defendant's motion and rendered a summary judgment that plaintiffs and intervenor in the consolidated cases take nothing against defendant Henger. Judgment was also rendered that Henger take

nothing against Baker Hotel, third-party defendant.

This appeal was taken by all the plaintiffs and the intervenor in the consolidated cases from the summary judgments rendered against them.

### Facts.

The record before us contains plans and specifications for the job, five affidavits, six depositions, a number of contract documents, work orders, letters, numerous other exihibits, and the stipulations entered into by the parties.

### 1. Original Agreement.

On June 20, 1945 the Hotel and the Contractor executed a contract called "A Form of Agreement Between Contractor and Owner." It recites that it is a standard form issued by the American Society of Architects for use when the cost of the work plus a fee is the basis of the payment.

The substance of some of the provisions of the Agreement follows:

Art. 1. The Contractor agrees to provide all labor and materials and to do all things necessary for the proper construction and completion of the work described and shown on drawings, specifications and general conditions to be delivered by the Architect. If anything in the General Conditions is inconsistent with this Agreement, the Agreement shall govern.

Art. 2. The Hotel through the Architect may from time to time by written instructions make changes in the drawings and specifications.

Art. 3. The Contractor agrees to furnish efficient business administration and superintendence and to use every effort to keep upon the work an adequate supply of workmen and materials and to secure its execution in the best and soundest way.

Art. 4. The Hotel agrees to pay to the Contractor as compensation for his services 10% of the total cost of all labor and materials.

Arts. 5 and 7. Certain named costs, including all labor directly on Contractor's payroll, materials, and the amounts of all separate contracts are to be paid direct by the Hotel.

Art. 10. All portions of the work that the Contractor's organization has not been accustomed to perform, or that the owner may direct, shall be let by the Hotel direct. The Contractor, being fully responsible for the general management of the building operation, shall have full directing authority over the execution of separate contracts.

### 2. Other Contract Documents.

On June 30, 1945 the specifications for the job were completed by the Architect. The Contractor Henger, in his deposition testified that the drawings and specifications were not complete when the original agreement was signed, but were delivered later. He said it is not unusual on a cost plus job for the plans to be completed and delivered after signing the contract because the contractor does not have to make up his mind in advance how much to charge. Other contract documents were the "General Conditions" and "Supplementary General Conditions."

### 3. "General Conditions."

The substance of some of the provisions of the written "General Conditions" follows:

Art. 9. The Contractor shall enforce strict discipline and good order among his employees, and shall not employ on the work any unfit person or anyone not skilled in the work assigned to him.

Art. 12. The Contractor shall continuously maintain adequate protection of all his work from damage and shall protect the Hotel's property from injury or loss arising in connection with this contract. He shall designate a responsible

member of his organization on the work, whose duty shall be the prevention of accidents.

Art. 14. The Contractor shall keep on his work, during its progress, a competent superintendent, satisfactory to the Architect. The superintendent shall not be changed except with the consent of the Architect, unless the superintendent proves to be unsatisfactory to the Contractor and ceases to be in his employ. The superintendent shall represent the Contractor in his absence and all directions given to him shall be as binding as if given to the Contractor.

Art. 27. The Contractor shall maintain such insurance as will protect him from claims under the Workmen's Compensation Acts, and from any other claims for damages for personal injury, or death.

Art. 35. The Hotel reserves the right to let other contracts in connection with this work.

Art. 36. The Contractor shall as soon as practicable after the execution of the contract, notify the Architect of the names of subcontractors proposed for the principal parts of the work, and shall not employ any that the Architect may object to as incompetent or unfit. The Contractor agrees that he is fully responsible to the Hotel for the acts and omissions of his subcontractors and of persons either directly or indirectly employed by them. Nothing contained in any of the contract documents shall create any contractual relation between any subcontractor and the Hotel.

Art. 38. The Architect shall have general supervision of the work. He is the agent of the Hotel only to the extent provided in the Contract Documents, and shall have written authority to act in special instances. He has authority to stop work when stoppage may be necessary to insure proper execution of the contract. He is the interpreter of the contract and the judge of its performance. He shall side

neither with the Hotel nor the Contractor, but shall use his powers under the contract to enforce its faithful performance by both.

4. "Supplementary General Conditions."

The substance of some of the provisions of the "Supplementary General Conditions" follows:

Sec. 1.02. The work includes all demolition and general construction, refrigerator work, and all plumbing, heating, ventilating, refrigeration, and electric wiring. It includes disconnecting hot water, cold water, gas, steam and waste piping and electric wiring connections to the relocated or newly provided equipment.

Sec. 1.08. The Contractor shall make all necessary arrangements and perform all services required for the care, protection and maintenance of all public utilities including pipe lines, assuming all responsibility and paying all costs incident to such care and protection.

Sec. 1.14. The Contractor shall be required to provide and install all piping, including safety devices, as may be required for or in connection with construction operations. Proper precautions shall be taken to prevent leaks. Should the Contractor require for, or in connection with construction operations, utilities services beyond those available for his own use from the present Hotel system, he will have to make his own arrangements for the procurement of same, and shall pay all costs thereof.

Sec. 1.20. Nothing herein contained or marked on the drawings shall be interpreted as giving the Contractor exclusive rights of occupancy of any part of the premises. The Hotel and its employees and other contractors with the Hotel for any purpose required by their contracts may enter upon such territory as directed or permitted by the Hotel.

Sec. 1.21. The Contractor shall be held responsible for the satisfactory and com-

plete execution of the work included in the contract.

Sec. 1.26. In addition to the workmen's compensation insurance required under "General Conditions" the General Contractor shall take out public liability insurance to limits of $100,000 for one person and $200,000 for one accident. He shall also maintain "Builders Risk" insurance covering damage from fire, hail, tornado, cyclone or vandalism.

Sec. 20.01. The work included under this heading consists of all materials, supplies, equipment, tools, transportation and facilities and performing all labor and services in connection with plumbing and other piping work described in this section of the specifications. The Contractor shall construct and fit all plumbing piping and gas piping as shown on the drawings and hereafter described in the most thorough manner and ready for use.

### 5. Stipulations.

Among the stipulations agreed to by the parties were the following:

(9) The "General Conditions," the blueprints, the Specifications, and the "Supplemental General Conditions" were delivered to the Contractor by the Architect for the Hotel, and were accepted by the Contractor subsequent to the signing of the "Agreement Between Contractor and Owner."

(10) The above instruments were all contract documents between the Contractor and Baker Hotel.

(19) Correct copies were attached of an endorsement issued by Standard Accident Company showing the Baker Hotel job to have been included in Henger's policy of workmen's compensation insurance.

(20) Other copies of endorsements attached to said policy related to other jobs with which Henger was connected other than the Baker Hotel job.

(34) The Hotel will be able to produce evidence that the explosion which occurred in the basement of the Hotel on June 21, 1946 was caused by the igniting of natural gas which had accumulated in the area above the refrigerator rooms and butcher shop and below the first floor level in the new section of the basement; and that

(35) At the time of the explosion, a ¾-inch natural gas line extended from a 3-inch gas line in the old part of the basement, through an area above the refrigeration rooms and butcher shop and down the north wall of the butcher shop; and that

(36) The 3-inch gas line to which the ¾-inch line was connected was a part of the natural gas supply system for the Baker Hotel kitchens; and that

(39) William Eaton Cotton was employed by Baker Hotel as purchasing agent and was engaged in the course of his employment in the basement when he was killed by the explosion, and was at a place where he was authorized to be by the Hotel; and that

(43) At the time of the death of Cotton the Hotel carried workmen's compensation insurance for its employees.

### 6. Testimony.

There is a conflict in the testimony as to the interpretation put upon the written contracts by the Hotel and the Contractor, and as to the manner in which the two parties undertook to perform their agreement.

Fenton J. Baker, Vice President and General Manager of the Hotel, stated in his deposition and affidavit that he did not tell any of the construction workers or subcontractors what to do or when to do it, nor did anyone else with the Hotel give them any such instructions. His only contact with them was through Henger. He held several conferences with Henger in an effort to get Henger to speed up the job. The Hotel did not hire Hoefle, the Superintendent on the job, or fix the amount of wages, or the hours of work of Hoefle, or of the foremen, or any of the individual laborers. Henger selected and arranged

for subcontractors; the Hotel did not select the contractors, nor execute contracts with them. Baker was not in on negotiations in deciding who the subcontractors should be and did not tell them when to come to work, or issue other instructions to them. The Hotel was not furnished with copies of subcontracts. The plumbing subcontract contract was between Henger and William Pitt Martyn and was not submitted to the Hotel. The Hotel held regular safety meetings of its employees, but the construction workers did not attend these meetings.

The record includes the affidavit of Charles E. Marnock, Chief Engineer of the Baker Hotel. Marnock stated that he had nothing to do with supervising the construction work and never told any of the workmen what to do. His only concern was to see that the Hotel facilities kept operating while the construction work was in progress. Whenever a problem arose along that line he took the matter up with Hoefle, the Superintendent, or one of the foremen. It was his understanding that Hoefle and his men were employees of Henger, not of the Hotel. He was concerned with safety precautions in the Hotel generally, but not in the construction area because the construction work was not complete, and none of the construction area had been turned over to the Hotel. He and the Hotel employees relied on the Henger Construction Company to take the necessary safety precautions in the construction area. None of the construction workers attended the regular Hotel employees safety meetings as they were not considered employees of the Hotel. Marnock gave a detailed description of the ¾-inch gas line extending through a low attic where the explosion occurred. This line was originally used to heat the Construction Company office. Neither Marnock nor any employee of the Hotel had anything to do with locating or installing this line; neither did they exercise any supervision or control over the line. The valve controlling the flow of gas into the line was turned on and off by the construction workers. Later this gas line was extended to the butcher shop, but none of the Hotel employees had anything to do with that either.

W. C. Henger testified by deposition. He stated that he had done other construction jobs for the Baker Hotel. In a conference prior to signing this contract Fenton Baker told him that this job would be different, as the Hotel desired to pay the bills direct. For that reason a meeting was arranged between the Hotel auditor and Mr. Kean, Henger's auditor. Henger and Bowles, an employee of Henger, contacted suppliers of materials and ordered materials delivered to the job. One of his, Henger's, obligations was to furnish from his organization persons who could operate and run the job. He told the Hotel he would provide a competent organization and would pick out competent men for key positions on the job. Accordingly he selected W. C. Hoefle as Superintendent for the job. Hoefle had been working for Henger about 25 years. Hoefle then contacted and hired T. A. Lott, A. O. Guthrie, and R. T. Roddy as foremen. Hoefle, the Superintendent, personally supervised the work, gave orders to the foremen, and told subcontractors when to come and when to go to work. Henger contends that under his 10% cost plus contract he was entitled to compensation based on wages paid to these men though they were not his employees. They had been loaned by him to the Hotel. Henger did not think he had any responsibility to check up on the work as it progressed. He did not designate anyone safety engineer, as provided by Art. 12 of the General Conditions. He did not inspect or approve work of subcontractors. Henger agreed to receive work orders from the Architect, and since these work orders set out specifically what was to be done, he did not have control of the job. The Hotel had control and maintained a guard at the Jackson Street entrance. The Hotel had a contract with Mundett Cork Company, a subcontractor. In an affidavit Henger says that neither he nor any person on his payroll gave or attempted to give any super-

vision to the work of the plumber, or to control him as to the manner of doing his work or the result thereof.

W. C. Hoefle, Superintendent on the job, testified by deposition. He said that he had little contact with Henger personally after the work began, but took his orders from the Hotel and from the Architect. He did not know what the deal was between Henger and the Hotel. He thought all the employees or subcontractors were also employees of the Hotel since the Hotel paid their wages. As general superintendent he was primarily responsible for the construction work proceeding in a safe manner. He did not designate any special man as safety inspector. He was familiar with the gas line that was extended through the attic space to the new butcher shop, but made no effort to keep up with it or inspect it. The Hotel had control over the construction area at all times. He originally ordered the line put in to furnish heat for the construction office. This line was later extended to the new butcher shop.

### 7. Exhibits.

There were more than 70 exhibits, one of which, the Specifications, is 127 pages long. Obviously we cannot present even a general summary of all the exhibits. But two must be described.

Exhibits Nos. 2 through 11, 16, and 27 through 36, are copies of work orders prepared in the office of the Architect and approved by Fenton J. Baker. We shall give one example: Exhibit No. 2 is the first work order. It is addressed to Henger Construction Company and authorizes Henger "to do the work described below" at an estimated cost of $37,100. The work described below was as follows: "For the construction of a new basement, including basement floors, slab and walls, together with the first floor slab over entire area, and for the construction of walls and roof of structure above ground, without any finish, for structure alone, as per plans, sheets 1 to 7 inclusive, and specifications,

dated June 30, 1945, for the estimated sum of $37,128.00." The order was signed by the Architect and approved by Fenton J. Baker for the Hotel.

Exhibit 5 is a copy of a written contract between Henger, the Contractor, and William Pitt Martyn, the plumber on the job. The plumber agreed to furnish labor, materials, tools and equipment to install the plumbing in connection with the Baker Hotel job in accordance with plans and specifications prepared by the Architect, on the basis of actual cost plus 25%. Invoices were to be made out direct to the Hotel. The contract was expressly made subject to the terms and conditions of the "General Conditions" and specifications and provides that the plumber shall hold Henger harmless from any loss due to the plumber's negligence.

### Opinion.

Plaintiffs as appellants have under several sub-heads briefed only one point on appeal: The court erred in rendering summary judgment because the evidence presents fact questions.

■ The general rule is that an independent contractor does not come within the meaning of "agent, servant or employé" as that term is used in workmen's compensation statutes. Haynes v. Taylor, Tex.Com.App., 35 S.W.2d 104; Hoffman v. Houston Clinic, Tex.Civ.App., 41 S.W.2d 134; Standard Accident Ins. Co. v. Pennsylvania Car Co., 5 Cir., 49 F.2d 73; 45 Tex.Jur. 379; 58 Am.Jur. 669; 27 Am.Jur. 483. Sometimes the issue whether a person is an independent contractor is a fact question. Halliburton v. Texas Indemnity Ins. Co., 147 Tex. 133, 213 S.W.2d 677; Haynes v. Taylor, supra. Appellant says that it is a fact question in this case.

The case of Shannon v. Western Indemnity Co., Tex.Com.App., 257 S.W. 522, names several of the tests to be applied in determining whether a person is an independent contractor. These tests may be summarized as follows:

1. Does the work require skill for its performance?

2. (a) Is the contractor to produce certain results by means and methods of his own? (b) In doing so is he entitled to employ his own help?

3. Is he to furnish part or all of the materials for the work?

4. Is he engaged in a distinct and generally recognized employment?

5. Is he to be compensated by a gross sum or by an amount to be determined according to a quantitative standard rather than by wages based on time spent on the job?

6. (a) Is he a free agent as to his hours of labor? (b) Is he under no obligation to work exclusively for the person with whom he is employed?

See also Industrial Indemnity Exchange v. Southard, 138 Tex. 531, 160 S.W.2d 905.

■ Applying the above tests we are of the opinion that the various written contract documents in this case, taken together with the conflicting testimony given by witnesses as to the interpretation put upon the documents and the manner in which the parties performed the contracts, present a fact question as to whether Henger was an independent contractor on the Baker Hotel job.

Henger, of course, contends that he was not an independent contractor on the job taken as a whole. But he goes further. He points out that one may be an independent contractor as to part of the work and a mere agent, servant or employee as to another part of the work. Dublin v. Taylor, B. & H. Ry. Co., 92 Tex. 535, 50 S.W. 120; Standard Ins. Co. v. McKee, 146 Tex. 183, 205 S.W.2d 362; Gulf Oil Corp. v. Wright, 5 Cir., 236 F.2d 46, at page 58. Whatever may have been his status as to other parts of the work, it is Henger's contention that he was not an independent

contractor as to the plumbing work; therefore is not responsible for the explosion on the ¾-inch gas line. This line was installed by Martyn, the plumber. According to Henger, the Hotel itself selected Martyn and contracted directly with him.

Here again we are of the opinion that a fact question is presented. The written contract which appears as Exhibit No. 5 in the record expressly provides that: "Henger Construction Company hereby contracts with William Pitt Martyn for furnishing all of the necessary labor, materials, tools and equipment to install the Plumbing * * *." Moreover, Fenton J. Baker, testifying for the Hotel, denied that he selected or contracted with Martyn to do the plumbing.

■ The fact that this was a cost plus contract and that the Hotel paid Henger's employees and subcontractors is not conclusive of the question whether Henger was an independent contractor. Henderson v. Couch, Tex.Civ.App., 274 S.W.2d 844, at page 852; Carruth v. Valley Ready-Mix Concrete Co., Tex.Civ.App., 221 S.W.2d 584; Swansea Lease, Inc., v. Molloy, 20 Ariz. 531, 183 P. 740; McLellan v. Brown, 275 Ky. 30, 120 S.W.2d 742; White v. Olive Hill Fire Brick Co., 169 Ky. 834, 185 S.W. 107; Scales v. First State Bank, 88 Or. 490, 172 P. 499; Houghton v. Loma Prieta Lumber Co., 152 Cal. 574, 93 P. 377; Kruse v. Revelson, 115 Ohio St. 594, 155 N.E. 137, 55 A.L.R. 289; 2 C.J.S. Agency § 2, p. 1027.

■ It is obvious from the contracts and the testimony that it was contemplated by both the Hotel and the Contractor that the Hotel during the construction work would continue to operate as a hotel in a manner as near normal as possible, and for that reason the Hotel employees would have access to the area under construction in the performance of their duties as employees of the Hotel. Thus a limited joint occupancy was contemplated. But such an arrangement is not conclusive evidence that Henger was not an independent con-

tractor. Donohue v. George W. Stiles Const. Co., 214 Ill.App. 82; Reilly v. Atlas Iron Const. Co., 3 App.Div. 363, 38 N.Y.S. 485; Richards v. O'Brien Bros., 1 Ga.App. 107, 57 S.E. 907; Miller v. Brunson Const. Co., Mo.Sup., 250 S.W.2d 958.

Henger also takes the position that he was not an independent contractor because he was subject to the detailed direction of the Architect in the manner of his performing the work. In support of this contention Henger points to the work orders prepared by the Architect with the approval of Baker. However it has often been held that ordinary supervision by an architect who has prepared the plans and specifications does not deprive the contractor of his independent status. Ewing v. Litzmann, Tex.Civ.App., 188 S.W. 742; Smith v. Humphreyville, 47 Tex.Civ.App. 140, 104 S.W. 495; Industrial Indemnity Exchange v. Southard, 138 Tex. 531, 160 S.W.2d 905. In the case now before us we believe that, considering Article 12 of the "Agreement," Arts. 13 and 38 of the "General Conditions", the work orders, and the testimony in the record, we cannot correctly say that because of the Architect's supervision Henger as a matter of law was not an independent contractor. In the main the work orders merely point out parts of the plan and specifications to be presently performed and the estimated cost, but the manner and time schedule for the performance, and the daily hours and wages to be paid the workers are not directed by the Hotel. At any rate the authority of the Architect and his activities are evidentiary matters to be considered along with other evidentiary matters in arriving at a proper answer to the fact question: Was Henger an independent contractor?

 Henger also contends that if he, Henger, is held to be an independent contractor, then the status of Cotton, the deceased, was at the time of the explosion that of a mere licensee in the construction area of the Hotel basement, and that Henger was responsible to him only for such dangerous conditions as might be known to Henger and might not be known or apparent to Cotton.

We are unable to accept Henger's view. The stipulation entered into by the parties says that Cotton was in the basement in the performance of his duties as a Hotel employee at the time of his death. The stipulation and the evidence are silent as to whether he was within or without the area of the basement where the construction work was in progress. Of course we cannot foresee what the evidence, if any, may be on that question in a trial on the merits. Should it be shown that Cotton was outside the construction area, then Henger would be answerable to Cotton's survivors if Henger is found to be an independent contractor whose negligence was a proximate cause of Cotton's death. Texas Cities Gas Co. v. Dickens, 140 Tex. 433, 168 S.W. 2d 208.

Likewise, we think that if it should be shown that Cotton was within the construction area at the time of his death, then the Contractor would be answerable if his negligence as an independent contractor was a proximate cause of Cotton's death. In this connection it is to be remembered that both the Contractor and the Hotel contemplated that the Hotel should remain open to guests during the progress of the work. Paragraph 1.20 of the "Supplementary General Conditions" together with other evidence clearly so provides. Henger agreed to Paragraph 1.20. It must be considered as part of the consideration flowing to the Hotel in connection with the letting of the contract to Henger. Therefore Henger owed a duty to Cotton, an employee of the Hotel engaged in the business of his employment, to keep the premises safe—that is, if it be first established as a fact that Henger was an independent contractor. Robert E. McKee, General Contractor, Inc., v. Patterson, 153 Tex. 517, 271 S.W.2d 391; Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853; Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99;

Donohue v. George W. Stiles Const. Co., 214 Ill.App. 82; Reilly v. Atlas Iron Const. Co., 3 App.Div. 363, 38 N.Y.S. 485.

Henger also contends that even if Cotton should be considered a business invitee at the time of his death, his survivors are not entitled to recover because: (1) Cotton was not a party to the contract between Henger and the Hotel; (2) Henger was obliged to exercise only ordinary care; (3) as a general rule omissions to act are not tortious; (4) and Henger did not have active control of the premises; and (5) Henger was under no duty to inspect the gas line in question. Henger cites among others Western Textile Products Co. v. Sidran, 153 Tex. 21, 262 S.W.2d 942, and Texas & N. O. R. Co. v. Sarver, Tex.Civ. App., 113 S.W.2d 317.

Without prolonging this opinion we shall merely say that the above two cases and others cited by Henger are not in point here. Cases most nearly in point under the circumstances presented to us in this case are those already cited in this opinion, including Robert E. McKee, General Contractor, Inc., v. Patterson, 153 Tex. 517, 271 S.W.2d 391, at page 395; R. E. Cox Dry Goods Co. v. Kellog, Tex.Civ.App., 145 S.W.2d 675; and in addition the following: Westinghouse Electric Elevator Co. v. Hatcher, 5 Cir., 133 F.2d 109; Bollin v. Elevator Construction & Repair Co., 361 Pa. 7, 63 A.2d 19, 6 A.L.R.2d 277, 284; Durham v. Warner Elevator Mfg. Co., 166 Ohio St. 31, 139 N.E.2d 10; 65 C.J.S. Negligence § 94, p. 610.

■ It is to be noted that plaintiffs have pled res ipsa loquitur. Henger says the doctrine is not applicable here because the Architect, who specified the use of iron fittings, Martyn, the plumber who installed the gas pipe, the Mundet Cork Company, whose men were actually in the attic at the time of the explosion, and the Hotel itself, were all involved in the situation. There is an obvious possibility, says Henger, that the negligence of any one or more of such parties might have caused the explosion, rather than Henger's negligence. Therefore the presumption of negligence on Henger's part may not be invoked. In support of his view Henger cites Washington v. Missouri, K. & T. R. Co. of Texas, 90 Tex. 314, 38 S.W. 764; National Hotel Co. v. Motley, Tex.Civ.App., 123 S.W.2d 461; Texas Hotel Co. v. Cosby, Tex.Civ.App., 131 S.W.2d 261; and Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659.

We think that under all the evidence before us a fact issue is raised as to res ipsa loquitur. Honea v. Coca Cola Bottling Co., 143 Tex. 272, 183 S.W.2d 968, 160 A.L.R. 1445; Van Horn v. Pacific Refining & Roofing Co., 27 Cal.App. 105, 148 P. 951; McCloskey v. Koplar, 329 Mo. 527, 46 S.W. 2d 557, 92 A.L.R. 641; Pandjiris v. Oliver Cadillac Co., 339 Mo. 711, 98 S.W.2d 969; Portilla Drilling Co. v. Miller, Tex.Civ. App., 144 S.W.2d 936; Meny v. Carlson, 6 N.J. 82, 77 A.2d 245, syl. 20, 22 A.L.R.2d 1160; Tyreco Refining Co. v. Cook, Tex. Civ.App., 110 S.W.2d 219; Hanson v. City Light & Traction Co., 238 Mo.App. 182, 178 S.W.2d 804; Black v. Partridge, 115 Cal. App.2d 639, 252 P.2d 760.

Appellants' point on appeal is sustained. The summary judgment in favor of Henger will be reversed.

■ Appellants ask that in the event of a remand of the case we give the trial court instructions to proceed in accordance with its order of consolidation of the 20 lawsuits involved here.

Upon motion of appellants, who were plaintiffs in the trial court, the 20 suits were consolidated as to liability issues with this case. The court further ordered that the damage issues in the Cotton case be tried with the consolidated case, but that the damage issues in the remaining cases be reserved for separate proceedings.

It is our opinion that the trial court had authority under Rules of Civil Procedure, rule 174(a) in the exercise of its discretion to consolidate all or some of the 20 causes

of action filed by various plaintiffs against the same defendant W. C. Henger, doing business as Henger Construction Company. All the suits are for damages growing out of the same accident, the Baker Hotel explosion of June 21, 1946. It has been stipulated that the issues in all of the cases are the same so far as the liability of Henger is concerned.

But we cannot approve that part of the court's order providing that the damage issues in all but the Cotton case be reserved for separate trials. Such procedure has been condemned by our Supreme Court in tort cases. In Fisher v. Coastal Transport Co., 149 Tex. 224, 230 S.W.2d 522, 525, the Court said:

> "The issues in this case are closely related and are indivisible * * * The jury should have the entire case before it in reaching its verdict on the issues involved."

In Waples-Platter Co. v. Commercial Standard Ins. Co., Tex.Civ.App., 287 S.W. 2d 680, we remanded the cause under Rule 434 for trial on the damage issue only, since there was no error in the liability issues. However the Supreme Court modified our judgment so as to order a full remand of the entire case for a new trial of all issues. The Supreme Court held that the issues were not severable. Waples-Platter Co. v. Commercial Standard Ins. Co., 294 S.W.2d 375. If the issues are not severable, the trial court may not under Rule 174(b), T.R.C.P. order separate trials of different issues in the same case.

The plaintiffs Maude Rhody Cotton et al. had sued only W. C. Henger, so they appealed only as to him.

Henger did not except to the judgment of the court denying him recovery against the Baker Hotel, nor did he give notice of appeal, or file an appeal bond. His third-party action asked recovery over against the Hotel only in the event judgment was rendered against him in favor of the plaintiffs. No judgment was rendered against him in favor of plaintiffs, so he made no objection and perfected no appeal from the judgment in favor of the Hotel on his third-party action.

Now that we have decided to reverse the summary judgment in favor of Henger and remand the plaintiffs' case for a trial on the merits, should we under the circumstances leave undisturbed the judgment that Henger take nothing against the Hotel in his third-party action? Or should we set aside that judgment also, though *the Hotel was not a party to the appeal?*

Henger and the Hotel have filed opposing briefs on the question. It has been held that where one defendant is given judgment over against another defendant, said judgment falls with reversal of the judgment in favor of the plaintiff in the suit. Blankenbeckler v. Kuykendall, Tex. Civ.App., 256 S.W. 323; Cameron v. Hinton, Tex.Civ.App., 48 S.W. 616, affirmed 92 Tex. 492, 49 S.W. 1047. Moreover our Supreme Court has said, "The rule that a reversal upon appeal by a party does not justify a reversal in favor of non-appealing parties is not invariable." Truck Drivers, etc. v. Whitfield Transportation, Inc., 154 Tex. 91, 273 S.W.2d 857, at page 863; see also American Indemnity Co. v. Martin, Tex.Com.App., 84 S.W.2d 697; 3-B Tex. Jur. 491–492. It has also been held that a judgment is treated as an entirety where the liability of one defendant is dependent upon that of another. 3-B Tex.Jur. 537, 538. Accordingly we have concluded that we have authority to set aside and we do set aside the judgment that Henger take nothing against the Hotel.

The judgment of the trial court awarding a summary judgment in favor of Henger that plaintiffs and intervenor take nothing, and judgment in favor of the Baker Hotel that Henger take nothing in his third-party action, are reversed and the causes are remanded for further proceedings consistent with this opinion.

Reversed and remanded.

## On Rehearing.

 Upon rehearing we have concluded that we should have left undisturbed the judgment in the third-party action that W. C. Henger, doing business as Henger Construction Company, take nothing against Baker Hotel of Dallas, Inc.

Henger did not give notice of appeal and did not file an appeal bond. He did not present any points of error before this Court pertaining to the judgment in favor of the Hotel.

Cotton and the other plaintiffs did not in any of their suits name the Hotel as a defendant. Neither did Cotton or any others of the plaintiffs perfect an appeal from the judgment in favor of the Hotel in Henger's third-party action. It was unnecessary for us to reverse the judgment in favor of the Hotel in order to give Cotton and the other plaintiffs, the only appellants before us, the relief which they sought on appeal. The two causes of action are divisible, and the two judgments are sufficiently distinct and independent of each other so that we think we should reverse the one judgment while leaving the other undisturbed. Dyer v. Railroad Commission of Texas, Tex.Civ.App., 115 S.W.2d 1020; Sherman v. Stein, Tex.Civ.App., 173 S.W.2d 732; Detroit Fidelity & Surety Co. v. State, 124 Tex. 145, 76 S.W.2d 492; Pumphrey v. Hunter, Tex.Civ.App., 270 S.W. 237; Fidelity & Casualty Co. of New York v. Harrison, Tex.Civ.App., 274 S.W. 1002; Randle v. Naugle, Tex.Civ.App., 299 S.W. 297.

The motion for rehearing of Baker Hotel of Dallas, Inc., is sustained. Our judgment reversing the judgment of the trial court in favor of the Hotel is set aside, and we here enter judgment leaving undisturbed the trial court's judgment that W. C. Henger, doing business as Henger Construction Company, take nothing against Baker Hotel of Dallas, Inc., third party defendant.

The motion for rehearing of W. C. Henger is overruled.